FILED
OCT 2 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERG TRANSIT SYSTEMS (USA), INC., <br><br>A California Corporation, <br><br>1800 Sutter Street, Suite 900, <br>Concord, CA 94520, <br><br>*Plaintiff,* <br><br>v. <br><br>WASHINGTON METROPOLITAN <br>AREA TRANSIT AUTHORITY, <br><br>An Interstate Agency created by Compact, <br><br>SERVE: Carol B. O'Keefe, Esq. <br>General Counsel <br>Washington Metropolitan Transit Authority <br>600 5th Street, N.W. <br>Washington, DC 20001 | Case: 1:07-cv-01924 <br>Assigned To : Collyer, Rosemary M. <br>Assign. Date : 10/25/2007 <br>Description: FOIA/Privacy Act |

## COMPLAINT

As and for its complaint against the Washington Metropolitan Area Transit Authority ("WMATA"), ERG Transit Systems (USA), Inc. ("ERG") for declaratory judgment, enforcement of WMATA's Public Access to Records Policy, and a permanent injunction, ERG states as follows:

### INTRODUCTION AND NATURE OF ACTION

In 2005, WMATA approved and promulgated an amended Public Access to Records Policy ("PARP"), which provides that "WMATA will interpret and apply this Policy consistent with the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and federal practice . . ."

1

PARP, § 1.0, at p. 1. Like FOIA, the PARP establishes exemptions from disclosure of trade secrets and confidential commercial or financial information submitted to WMATA by a person or entity, and mandatory procedures for handling such information which may be exempt on that basis.

By this Complaint, ERG seeks a declaration of its rights under, and to enforce, the PARP, and to protect from disclosure and permanently enjoin WMATA from releasing, pursuant to the request for disclosure of ERG's competitor, Cubic Transportation Systems, Inc., confidential and proprietary commercial and financial information and trade secrets ERG submitted to WMATA in connection with administration of WMATA Contract No. C05304. Such information and trade secrets are exempt from disclosure under federal FOIA law governing application of the relevant sections of the PARP, pursuant to the exemption at 5 U.S.C. § 552(b)(4), and the co-extensive protection of the federal Trade Secrets Act, 18 U.S.C. § 1905, under federal FOIA jurisprudence, made applicable to the PARP under Section 1.0 thereof.

## PARTIES

1. Plaintiff ERG Transit Systems (USA), Inc., is a corporation organized and existing under the laws of California, having its principal place of business in Concord, California.

2. ERG is the U.S. operating company within the ERG Group. Its parent company, ERG Ltd., is located in Perth, Western Australia. The ERG Group is one of the world's leading developers and suppliers of integrated fare management software systems, and smart card systems and services for the transit industry, with transit customers throughout the world.

3. WMATA is an interstate instrumentality created under an interstate Compact among the District of Columbia, the State of Maryland, and the Commonwealth of Virginia to

2

create, operate and administer a mass transit system for the Washington, D.C., metropolitan area. D.C. Code Ann. § 9-1107.01 *et seq.* (2006 Supp.); Md. Code Ann., Transportation Article, § 10-204 *et seq.* (2004); Va. Code Ann. § 56-529 *et seq.* (2004). WMATA has the capacity to be sued in its own name. D.C. Code Ann § 9-1007.01, WMATA Compact, Art. V, § 12(a).

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to Section 81 of the WMATA Compact, D.C. Code Ann. §§ 9-1107.01, Art. XVI, § 81, and 9-1107.10, which provide:

> The United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against [WMATA] and to enforce subpoenas issued under [the WMATA Compact]. Any such action initiated in a State or District of Columbia Court shall be removable to the appropriate United States District Court in the manner provided by 28 U.S.C. §1446.

The United States Congress consented to the original WMATA Compact in Public Law No. 89-774 (Nov. 6, 1966) preamble, 80 Stat. 1324–1325, under the authority of article I, section 10, clause 3 of the United States Constitution. The WMATA Compact, including Section 81, has the force and effect of a law of the United States. *Texas* v. *New Mexico,* 482 U.S. 124, 128 (1987).

5. This case involves an actual controversy within the jurisdiction of this Court, and this Court has the power to declare the parties' rights under the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), and to grant such further necessary and proper relief.

6. Section 9.3.2 of the PARP provides that, "[I]n accordance with Section 81 of the WMATA Compact, an action to enforce the [PARP] may be brought in any state or federal

3

Court of the United States located in the District of Columbia, Maryland or Virginia, without regard to the amount in controversy."

7. The PARP expressly provides that "WMATA will interpret and apply this Policy consistent with the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and federal practice . . . ." PARP, § 1, at p. 1.

8. By this Complaint, ERG seeks declaration and enforcement of its rights under the PARP to protect from disclosure, and permanently enjoin WMATA from releasing, pursuant to the request for disclosure of ERG's competitor, Cubic Transportation Systems, Inc. ("Cubic"), confidential and proprietary commercial and financial information and trade secrets ERG submitted to WMATA in connection with administration of WMATA Contract No. C05304.

9. Such information and trade secrets are exempt from disclosure under federal FOIA law governing application of Section 6.1.4 of the PARP, pursuant to the exemption at 5 U.S.C. § 552(b)(4), and the co-extensive protection of the federal Trade Secrets Act, 18 U.S.C. § 1905, as applied in federal FOIA jurisprudence.

10. Venue properly lies in this Court.

## FACTUAL BACKGROUND

### A. *The Contract, Contract Administration Issues, and ERG's Efforts to To Resolve Them With WMATA Cooperatively Through Negotiations*

11. In 1999, WMATA introduced the "SmarTrip®" card, a memory logic "smart card," enabling payment of Metrorail fares, utilizing chip technology developed by Cubic and Ramtron International Corporation.

12. Cubic is a direct competitor of ERG's, offering similar products and services. Each company regularly bids in major procurements for smart card systems and related services for transit systems in the United States and other countries. ERG and Cubic have competed in

4

the United States for approximately 10 years and longer internationally. Over the past decade, contracts awarded for most of such systems in connection with major public transit projects in the U.S. and U.K. have gone to either ERG or Cubic, or in some cases, including the WMATA procurement from which this case arises, both companies were awarded contracts and directed to integrate systems.

13. A "smart card," as employed by WMATA, is a layered plastic card in which is embedded a microprocessor, and a radio frequency receiver. Upon being contacted by a radio transmission device, the card can communicate with the transmission source, and perform data storage and mathematical manipulation, including retrieval and modification of the data stored on the memory of the card. On information and belief, Cubic is the sole source of SmarTrip® cards to WMATA.

14. In 2001, WMATA issued a Request for Proposal for the procurement of a state of the art automatic fare collection system ("RFP"). The project contemplated by the original RFP involved the supply, delivery, installation and maintenance by the successful offeror of a specified quantity of electronic validating bus fare collection systems, revenue collection equipment, ancillary equipment, spare parts, software and services for use in the Washington D.C. metropolitan area by WMATA and other regional bus operators.

15. As of 2002, WMATA was using its SmarTrip® cards for rail travel and Metro station parking. In the RFP, WMATA sought to expand SmarTrip® to become a seamless, integrated regional smart card-enabled fare payment system to be used on WMATA's and other regional bus operators' non-rail transit systems.

16. In January 2002, ERG submitted a final proposal, which was a revised proposal. By then, the RFP had been modified by WMATA not less than eight times.

17. Cubic also submitted proposals in response to the RFP and amendments thereto. WMATA's series of modifications to the RFP embodied changes in the technical approach that ultimately resulted in contract awards to both Cubic and ERG, with a mandate to both contractors to integrate their respective systems.

18. ERG's contract has an initial term of five years (one year startup "design/build" phase and four year "operation and maintenance" phase), with options for WMATA to renew for two successive two year periods. The initial term is set to expire in July 2008, unless ERG's period of performance is extended. Upon expiration, the work to be performed by ERG will likely be subject to a competitive procurement. ERG intends to bid in any such procurement.

19. On information and belief, Cubic is also likely to bid in such a procurement in competition with ERG.

20. Despite ERG's repeated warnings to WMATA that administering the SmarTrip® program through two contracts – one with ERG and the other with Cubic – created interdependency and potential for interference with ERG's performance due to delays or problems with Cubic's performance, WMATA proceeded in that manner nonetheless. As predicted, these same contract administration issues delayed ERG's ability to meet the tight timelines for the startup "design and build" phase, and caused ERG to incur additional costs. They also resulted in numerous changes to the contract work.

21. From the inception of the contract, through and including the present date, ERG has attempted to resolve these administration issues through cooperative negotiations with WMATA. These efforts culminated in ERG's submission in February 26, 2006, of a request for equitable adjustment ("REA").

22. ERG deliberately structured the REA to facilitate resolution through confidential negotiations, which ERG stated was its preferred mode of dealing with the issues it previously raised and tried to resolve with WMATA. In consequence, each page of the REA was marked "confidential." The REA provides WMATA with ERG's confidential perspective on the reasons why those efforts had not succeeded and why the project had been delayed as a result of WMATA's failure to administer the contract properly, and chronicling ERG's attempts to resolve the issues with WMATA cooperatively.

23. After months of additional negotiations, in September 2006, WMATA and ERG agreed to settle certain specific elements of the REA, through a bilateral contract modification increasing ERG's compensation for the specific items addressed in the modification, which became effective on December 21, 2006.

24. Other elements of the REA, by agreement of the parties, were not resolved by the modification, but expressly reserved, and those elements continue to be the subject of continuing settlement negotiations between WMATA and ERG.

### B. *PARP Procedures for Protection of Submitter's Business Information That May be Exempt From Disclosure Under Section 6.14*

25. In the WMATA PARP Statement of Purpose, WMATA recognizes that, in the regular course of its business, it receives from outside sources records on a variety of topics, and that "[s]ome of the records, if released, could benefit selectively or could cause personal or economic harm to members of the public [or] other organizations." PARP § 2.0, at p. 1.

26. Accordingly, Section 6.1.4 of the PARP exempts from disclosure "trade secrets and commercial or financial information obtained from a person and is privileged or confidential." This PARP exemption mirrors Exemption 4 under the federal FOIA. *See* 5 U.S.C. § 552(b)(4).

7

27. The PARP Section 7.11 governs WMATA's handling of requests for records that are potentially exempt under PARP Section 6.1.4, and provides that "[b]usiness information obtained by WMATA from a Submitter will be disclosed only pursuant to this Section." PARP § 7.11.1. The PARP defines "business information" as "information that may be protected from disclosure under subsection 6.1.4 of this Policy," and "Submitter" as "any person or entity from whom WMATA obtains business information, directly or indirectly." *Id.* § 7.11.2.

28. The PARP further provides that a "Submitter of business information will use good faith efforts to designate, by appropriate markings, either at the time of submission or at a reasonable time thereafter, any portions of its submission that it considers to be protected from disclosure under section 6.4.1 of this Policy." *Id.* § 7.11.3.

29. When WMATA's PARP Administrator receives a PARP request that seeks a Submitter's business information, and the information has been designated by Submitter in good faith as information considered to be protected from disclosure under subsection 6.1.4, or when WMATA has reason to believe that the information may be protected from disclosure under subsection 6.1.4, then WMATA is obliged to provide the Submitter with prompt written notice of such a request, to give the Submitter an opportunity to object to disclosure of any specified portion or that information under subsection 7.11.6 of the Policy. *Id.* § 7.11.4 & 7.11.5. The requester, too, is entitled to notice that WMATA has provided a Submitter with notice and an opportunity to object to disclosure. *Id.* § 7.11.10.

30. WMATA is obliged to consider a Submitter's objections and the specific grounds for nondisclosure in deciding whether to disclose business information. When WMATA decides to disclose such information over the objection of the Submitter, the PARP Administrator shall give the Submitter written notice, return receipt requested, stating its reasons why each of the

8

Submitter's disclosure objections were not sustained, and description of the business information to be disclosed, and a specified disclosure date. *Id.* § 7.11.7.

31. Section 7.11 of the PARP expressly contemplates the filing of a lawsuit by Submitter to prevent disclosure of business information, and requires, in such a case, that WMATA notify the requester of the filing of such a suit. *Id.* § 7.11.10.

32. ERG is a Submitter of the records and information at issue in this case within the meaning of Section 7.11 of the PARP, and properly designated such records and information as submissions that it considers to be protected from disclosure under Section 6.1.4, as required by Section 7.11.3 of the PARP.

### C. *Cubic's Records Request, WMATA's Notice, ERG'S Response and WMATA's Disclosure Decision*

33. By letter dated May 2, 2007, invoking the PARP, Cubic requested WMATA to release to Cubic copies of any ERG Requests for Equitable Adjustments and All Contract Modifications, copies of all ERG/WMATA Negotiated Settlement Agreements, all ERG claim documents, and dispositions on all claims.

34. On August 15, 2007, ERG received a letter from WMATA giving notice that WMATA had determined that certain business records submitted by ERG to WMATA were responsive to a request for release of records pursuant to the PARP. The letter stated that, if ERG considered any of the information in the records identified by WMATA to be proprietary or confidential, ERG was to identify such information, and explain why, by August 30, 2007. On information and belief, the referenced request was Cubic's request of May 2, 2007.

35. ERG responded to WMATA's notice in writing, on August 28, 2007, as supplemented by an additional submission on August 30, 2007. In its responses, ERG requested that certain documents in their entirety not be disclosed and that others be redacted, to prevent

9

disclosure of confidential commercial and financial information submitted to WMATA by ERG, disclosure of which would either cause ERG competitive harm, or which was information not generally disclosed publicly by ERG.

36. On October 11, 2007, WMATA sent ERG a further notice declaring its intention to release to the requester certain documents and information, disclosure of which ERG had objected in its responses, on October 26, 2007.

37. In the October 11, 2007 decision, WMATA took the positions that *all* the records and information it proposed to release were required to have been submitted by the contract, and, thus, "involuntarily" submitted by ERG to WMATA within the meaning of FOIA, and that the standard WMATA applied in determining whether they were exempt from disclosure was whether their release would cause substantial competitive harm to ERG. Also, WMATA notified ERG that it had identified additional documents it deemed responsive to Cubic's request, and demanded that ERG notify WMATA, by the same date, October 26, 2007, of any objections ERG had to disclosure of the "second wave" of documents, the same day it proposed to release the "first wave" of documents.

38. Despite WMATA's characterization of its October 11, 2007, letter as a "final determination" regarding Cubic's request for records, the letter's express identification of additional records and request for ERG's position as to whether they are confidential or proprietary and exempt from disclosure manifestly demonstrates that the October 11, 2007, letter is not, in a practical sense, a final determination as to whether records WMATA deems responsive to the information request at issue should be withheld as exempt from disclosure. Indeed, in the letter, WMATA states expressly that it will issue yet another determination as to the "second wave" of documents, after it considers ERG's objections to disclosure. ERG has

objections to disclosure of certain of the records and information identified in the "second wave," and will so respond.

39. After receipt of the notice, ERG, by counsel, contacted WMATA, noted that ERG did not agree with WMATA's determinations, and requested that WMATA defer disclosure of the "first wave" of documents until ERG could be heard on its objections to disclosure of the "second wave," so that ERG could seek judicial review of all of WMATA's disclosure decisions and disposition of ERG's objections in one action, as opposed to inefficient piecemeal litigation.

40. WMATA's piecemeal approach is arbitrary, capricious, an abuse of discretion, and contrary to the PARP, which does not contemplate or authorize multiple, serial "final determinations" as to a submitter's objections to disclosure of submitted records the agency identifies as responsive to a single request. This approach creates a strong potential for duplicative, inefficient judicial review in multiple actions, which would unnecessarily tax the resources of the court and the parties, and creates the potential for inconsistent rulings on the same issues. In addition, this approach deprives this Court of a complete record against which to measure WMATA's determinations as to the entire records request, yet ERG has no choice but to seek review now on a partial record, because WMATA will not agree to defer release of the "first wave" records until WMATA considers and determines issues raised by ERG as to the "second wave."

41. WMATA's determinations as to the "first wave" of records it proposes to release are founded on a misapplication of the appropriate legal standard. Without reasoned analysis supported in the record, WMATA issued a blanket pronouncement that *all* records it identified in its October 11, 2007, letter were "involuntarily" submitted by ERG as part of the contract

requirements, and therefore that ERG must show substantial competitive harm as to all such records. This conclusion is arbitrary, capricious, an abuse of discretion, and contrary to law.

42. Most of the records WMATA has determined to disclose and/or refuses to redact in the manner proposed by ERG pertain not to the types of information ERG is required to produce in connection with *obtaining* a contract and regarded under FOIA case law to be subject to the "involuntary" submission standard. Rather, such records and information ERG voluntarily submitted to WMATA in connection with negotiations pertaining to issues arising in the *administration* of the contract.

43. The REA itself and two letters ERG submitted to WMATA in connection therewith are an illustrative, but not exclusive, example. WMATA agreed to withhold the bulk of the REA on the grounds that premature disclosure of the document would compromise WMATA's negotiating position. WMATA refused to withhold or redact in the manner proposed by ERG the letters and other portions of the REA, overruling ERG's objections that the information was confidential commercial and financial information that would not generally be disclosed to the public. These documents are clearly marked "confidential," and were submitted to WMATA to facilitate an ongoing business negotiation concerning contract administration issues, which has not yet concluded.

44. WMATA's determinations in the October 11, 2007 letter further reflect WMATA's inconsistent application of PARP § 6.1.4 to the same types of records and information, in some cases deciding to release records and information or to refuse redactions suggested by ERG, and in others, agreeing to redact or withhold the same categories or types of information, without articulating any reasoning for the differential treatment. Such inconsistent

application of legal standards is also arbitrary, capricious, an abuse of discretion, and in excess of WMATA's authority under PARP.

45. To the extent that records and information submitted by ERG to WMATA and identified by WMATA as subject to disclosure (over ERG's objections that the records and/or information are confidential commercial or financial information, disclosure of which to ERG's competitor Cubic would likely result in substantial competitive harm to ERG), were properly governed by legal standards applicable to "involuntary" submissions, WMATA's rejection of ERG's objections and suggested redactions and decision to release such records and information are arbitrary, capricious, an abuse of discretion, and in excess of WMATA's authority under the PARP.

46. Due to the interdependencies created by the manner in which WMATA has elected to administer the ERG and Cubic contracts, WMATA's proposed disclosures of ERG's confidential and proprietary commercial and financial information submitted to WMATA in connection with ERG's negotiations would give Cubic an unfair insight into the details of the competitive and financial impact on ERG of Cubic's behavior in performance of its own contract, and Cubic's attempts to influence WMATA's contract administration practices. This would inure to ERG's competitive disadvantage in connection with this contract, and also in connection with future procurements before WMATA and other agencies in which ERG and Cubic may compete.

47. Given Cubic's history, disclosure of the records and information as proposed by WMATA is likely to enable Cubic to interfere further with ERG's performance, to ERG's competitive disadvantage.

48. In addition, WMATA's decisions concerning financial, cost, rates, price, duration of performance, proposed methods and orders of performance and workflow information in the ERG records WMATA decided to release would, alone and/or in combination with other released records and information, either: (a) directly give an advantage to a competitor of ERG (including Cubic, the requester of the records at issue) in derogation of ERG's competitive position; or, (b) by extrapolation from information WMATA refused to redact, permit a competitor to ascertain the same information WMATA redacted.

49. Because it proposes to disclose confidential or privileged commercial or financial information exempt from disclosure under PARP § 6.14, WMATA's October 11, 2007, determination is without authority, arbitrary, capricious, and abuse of discretion, and contrary to federal law governing exemption (b)(4) under FOIA, as applied in federal FOIA jurisprudence and made applicable to this case by operation of PARP § 1.0.

50. The information requested by Cubic contains ERG's trade secrets within the meaning of the federal Trade Secrets Act ("TSA"), 18 U.S.C. § 1905.

51. To the extent that WMATA discloses records or information protected from disclosure by operation of the exemption at PARP § 6.14, such disclosure would also be prohibited under TSA, and such disclosure would be in violation of ERG's rights pursuant to the TSA.

52. As enumerated herein, ERG will suffer immediate and irreparable harm if WMATA discloses ERG's confidential and proprietary commercial and financial information and trade secrets as proposed in WMATA's October 11, 2007, letter to ERG's commercial competitor, Cubic.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiff ERG Transit Systems (USA), Inc. respectfully requests the Court to enter an order and judgment:

A.   Decreeing and declaring exempt from release or disclosure under the PARP the records and information submitted to WMATA by ERG and identified by WMATA as subject to release and disclosure over ERG's objections in WMATA's October 11, 2007, decision (the "Information");

B.   Setting aside and holding unlawful WMATA's October 11, 2007, decision to release the Information as arbitrary, capricious, an abuse of discretion, contrary to law, and in excess of WMATA's authority;

C.   Enjoining permanently WMATA from releasing and disclosing the Information; and

D.   Granting such other and further declaratory, injunctive, equitable, and legal relief as justice may require in the circumstances of this case.

Respectfully submitted,

ERG TRANSIT SYSTEMS (USA), INC.

By its attorneys:

Benjamin J. Lambiotte
D.C. Bar No. 421288
blambiotte@gsblaw.com
Matthew C. Hoyer
D.C. Bar. No. 975544
Robert A.W. Boraks
D.C. Bar No. 72132
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D.C. 20007
(202) 965-7880

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
ERG Transit Systems (USA), Inc.

## DEFENDANTS
Washington Metropolitan Area Transit Authority

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Contra Costa, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Washington, DC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Benjamin J. Lambiotte, Esq.
Garvey Schubert Barer
1000 Potomac St., N.W., Suite 500
Washington, DC 20007

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01924
Assigned To : Collyer, Rosemary M.
Assign. Date : 10/25/2007
Description: FOIA/Privacy Act

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/ Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)  OR  ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/* *2255* ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination* ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT* ☒ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ○ J. *Student Loan* ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)* ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)* ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ○ M. *Contract* ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ○ N. *Three-Judge Court* ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. § 2201(a) for declaration of rights under WMATA FOIA, (Public Access to Records) policy, per § 81 of WMATA Compact.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 0   Check YES only if demanded in complaint   JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE October 25, 2007   SIGNATURE OF ATTORNEY OF RECORD [signature]

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.