## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERG TRANSIT SYSTEMS (USA), INC.,     ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.     ) | Case: 1:07-cv-01924 |
| ) | Assigned To: Collyer, Rosemary M. |
| WASHINGTON METROPOLITAN     ) | Assign. Date: 10/25/2007 |
| AREA TRANSIT AUTHORITY,     ) | Description: FOIA/Privacy Act |
| ) | |
| Defendant.     ) | |
| ) | |

### CUBIC TRANSPORTATION SYSTEMS, INC.'S
### MOTION TO INTERVENE

Cubic Transportation Systems, Inc. ("Cubic"), by counsel, respectfully moves to intervene as a defendant in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure. The Court should grant this timely motion pursuant to Rule 24(a) because Cubic has an interest in this action—protecting its right to receive information under the Washington Metropolitan Area Transit Authority ("WMATA")'s Public Access to Records Policy ("PARP"). Because WMATA does not represent Cubic's interest in this action, no party adequately represents the interest of Cubic. As a result, Cubic must intervene to protect its rights under the PARP.

Alternatively, the Court should permit Cubic to intervene under Rule 24(b). Cubic's defense and the Plaintiff's claim involve the same provisions of the PARP and thus involve common questions of law and fact. Intervention will not delay or prejudice the adjudication of the rights of the existing parties.

1:07-cv-01924RMC

Pursuant to Local Rule 7(m), counsel for Cubic has discussed the present motion with counsel for Plaintiff and counsel for WMATA. WMATA does not oppose this motion and Plaintiff opposes the motion.

For these reasons, and the grounds set forth in the accompanying memorandum, the Court should grant Cubic's Motion to Intervene. A proposed order is attached.

Dated: December 3, 2007                    WILEY REIN LLP

                                           Rodney H. Glover
                                           Bar No. 387257
                                           1776 K Street, N.W.
                                           Washington, DC 20006
                                           Telephone: (202) 719-7381
                                           Facsimile: (202) 974-1426
                                           Email: rglover@wileyrein.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December, 2007 a copy of the foregoing document was served electronically and by first class mail upon the following:

Benjamin J. Lambiotte, Esq.
Matthew C. Hoyer, Esq.
Robert A.W. Boraks, Esq.
GARVEY SCHUBERT BARER
1000 Potomac Street, NW
Fifth Floor
Washington, DC  20007
Telephone: (202) 965-7880
Fax: (202) 965-1729
Email: blambiotte@gsblaw.com

Phillip T. Staub, Esq.
Washington Metropolitan Transit Authority
600 5th Street, N.W.
Washington, DC  20007
Telephone: (202) 962-2555
Email: pstaub@wmata.com


Rodney H. Glover

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERG TRANSIT SYSTEMS (USA), INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WASHINGTON METROPOLITAN | ) |
| AREA TRANSIT AUTHORITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Case: 1:07-cv-01924
Assigned To: Collyer, Rosemary M.
Assign. Date: 10/25/2007
Description: FOIA/Privacy Act

## MEMORANDUM IN SUPPORT OF
## CUBIC TRANSPORTATION SYSTEMS, INC.'S MOTION TO INTERVENE

Cubic Transportation Systems, Inc. ("Cubic") submits this memorandum in support of its motion to intervene in the above-captioned action pursuant to Rule 24 of the Federal Rules of Civil Procedure. The present action arises from the Washington Metropolitan Area Transportation Authority ("WMATA")'s letter to ERG Transit Systems (USA), Inc. ("ERG") informing ERG of WMATA's intentions regarding certain documents it had decided to disclose to Cubic in response to Cubic's May 2, 2007 request for documents under WMATA's Public Access to Records Policy ("PARP").

ERG instituted this action to prevent WMATA from providing to Cubic the documents WMATA found responsive to Cubic's request and disclosable under the PARP. Therefore, Cubic, to protect its interest in accessing these public records—an interest which WMATA does not adequately represent—moves to intervene as a defendant in this matter.

1:07-cv-01924RMC

**FACTUAL BACKGROUND**

In 2001, WMATA issued a Request for Proposal ("Request") for the procurement of a state of the art automatic fare collection system ("SmarTrip® program"). Cubic and ERG both submitted proposals in response to WMATA's Request. In 2003, after numerous amendments to its original Request, WMATA awarded contracts to both Cubic and ERG with instructions to integrate their performance under their respective contracts. WMATA's decision to award two contracts, CO5034 to ERG and C44444 to Cubic, to implement the SmarTrip® program has led both Cubic and ERG to incur delay and additional costs in performing their contractual obligations.

To recoup the additional costs ERG has submitted numerous claims for additional funds throughout the duration of its contract. In 2004, two contract change orders, in the amounts of $50,000 and $145,000, were approved by WMATA for additional labor costs incurred by ERG. *See* WMATA Metro Electronic Action Document ("MEAD") 90577 at 3 (4/15/2005)[Attachment 1]. Also in 2004, ERG filed a delay claim seeking almost two million dollars in additional costs. *See* WMATA Quarterly Report on First Quarter of FY 2005 at 11 (discussing ERG's $1,185,401 delay claim resulting in potential adjustment of $545,071)[Attachment 2]. In 2005, ERG was awarded $200,000 in another contract modification relating to additional labor costs. *See* MEAD 99264 at 4 (3/1/2006)(seeking an adjustment of $1,762,969.00 to ERG's original contract)[Attachment 3]. On February 26, 2006, ERG submitted a request for equitable adjustment ("REA"). Some of ERG's REA claims were settled on December 21, 2006. *See* WMATA Board Action/Information Summary re MEAD 99698 (Dec. 21, 2006)[Attachment 4]; *see also*, Comp. ¶ 23. On information and belief, other elements of ERG's REA remain unsettled. *See* Comp. ¶ 24.

Cubic not only contracts with WMATA to administer the SmarTrip® program, but it also has a contract with the Maryland Transit Administration ("MTA") to provide similar services as those provided by Cubic and ERG under their respective contracts with WMATA. While Cubic's contract with the MTA covers only rail and bus services and its contract with WMATA is more comprehensive, both contracts have extremely similar provisions and requirements. Cubic has encountered additional costs and delays in its implementation of both its contracts with the MTA and WMATA. These additional costs and delays are similar to the problems encountered by ERG in its contract with WMATA. Because of these additional costs and delays, Cubic has recently filed a REA with the MTA and is contemplating submitting a REA to WMATA. Thus, in order to ensure that it is treated fairly and fully compensated by the MTA and WMATA, as ERG has been, Cubic has sought documents relative to WMATA's handling of ERG's claims and REAs. *See* Cubic PARP Request (May 2, 2007)(seeking copies of ERG REAs, Contract Modifications, WMATA/ERG Negotiated Settlement Agreements, ERG claim documents and, dispositions on all claims)[Attachment 5].

While many documents pertaining to past adjustments to ERG's contract are accessible through WMATA's website, *see* Attachments 1-4, Cubic believes many more such documents, which could be helpful in preparing its claims against the MTA and WMATA, exist and are not so accessible. Based on this belief, on May 2, 2007, Cubic, exercising its rights under the PARP, requested that WMATA produce to it all documents relative to ERG's REAs, contract modifications, ERG/WMATA settlement agreements and all other ERG claims and the dispositions of these claims.

On information and belief, WMATA found documents in its possession to be responsive to Cubic's request and disclosable under the PARP. *See* Compl. ¶ 34. On information and

belief, included among the documents WMATA found disclosable were sections of ERG's REA. *See* Compl. ¶ 43.  Cubic seeks to intervene in this action solely to protect its right to receive the documents WMATA has already found responsive and disclosable under the PARP.

## I.    CUBIC IS ENTITLED TO INTERVENE UNDER RULE 24(a).

Rule 24(a) states:

> **Intervention of Right.**  Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).  In the D.C. Circuit, an applicant for intervention must show that (1) the motion is timely; (2) the applicant has standing; (3) the applicant's interest relates to the property or transaction which is the subject of the action; (4) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect the interest; and (5) the applicant's interest is not adequately represented by the existing parties. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *Appleton v. FDA*, 310 F. Supp. 2d 194, 196 (D.D.C. 2004).

### A.    Cubic's Motion Is Timely.

As a threshold matter, it is beyond question that Cubic's motion to intervene is timely because Cubic is filing the motion within five weeks of the filing of the original Complaint by ERG and within a week of the filing of an answer by WMATA. *See, e.g., Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 2007 WL 3088581 (D.D.C. Oct. 24, 2007) (finding motion to intervene, filed less than three months after the Complaint was filed, timely).

**B.    Cubic Has Standing to Be a Defendant In This Action.**

Cubic has constitutional standing to intervene in this action and therefore satisfies the D.C. Circuit's criteria for intervention under Rule 24(a). "To establish standing under Article III, a prospective intervenor—like any party—must show:  (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 732-33 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Injury-in-fact entails "an invasion of a legally protected interest which is (a) concrete and particularized," meaning that the injury affects the party in "a personal and individual way;" and (b) "actual or imminent, not conjectural or hypothetical." *Lujan*, 504, U.S. at 560-61, 561 n. 1. In this case, ERG's request for relief threatens Cubic's legal right to obtain disclosable records. This threatened invasion of Cubic's legally protected interest under the PARP to obtain and review public records establishes "injury-in-fact."

Causation exists where the injury is "traceable to the regulatory action . . . that the [plaintiff] seeks in the underlying suit." *Fund for Animals*, 322 F.3d at 733.  Similarly, redressability occurs where "it is likely that a decision favorable to the [applicant for intervention] would prevent the loss from occurring." *Id.*  ERG's claim for relief, if successful, would force a regulatory action, *i.e.*, a refusal by WMATA to disclose certain public records–that would cause injury to Cubic.  A ruling against ERG and in favor of Cubic, however, would allow WMATA to turn the documents over and preserve Cubic's legal rights under the PARP to obtain and review public records.  Therefore, because ERG seeks a regulatory action that would in fact harm Cubic's legally protected interest in obtaining public records and because a ruling for Cubic would redress this threat, Cubic has constitutional standing to intervene as a matter of right under Rule 24(a).

C.  **Cubic Has a Legally Cognizable Interest that Relates to the Subject Matter of this Action.**

According to the D.C. Circuit, an applicant for intervention "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998); *see also Fund for Animals*, 322 F.3d at 735 ("Our conclusion that the [applicant] has constitutional standing is alone sufficient to establish that the [applicant] has an interest relating to the property or transaction which is the subject of the action."). For the reasons just discussed, Cubic has constitutional standing and therefore the legally protectable interest necessary to establish entitlement to intervene.

D.  **Cubic's Interests Relate To A Transaction Which Is The Subject Of The Underlying Complaint.**

Cubic's interest relates to the "transaction" which is the subject of this action in that ERG is challenging WMATA's decision that certain public records in its possession were not protected from disclosure under the PARP. Cubic has requested the documents WMATA deemed fit for disclosure. Therefore, both this action and Cubic's interest revolve around the same transaction, i.e.; what WMATA is allowed to disclose under the PARP.

E.  **Cubic Is So Situated That Its Interest May Be Impaired.**

Cubic is "so situated that the disposition of the action may as a practical matter impair or impede" its ability to protect its rights under the PARP to obtain public records. The D.C. Circuit has recognized that "*stare decisis* principles may in some cases supply the practical disadvantage that warrants intervention as of right." *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967)(citing *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 826-29 (5th Cir. 1967)). If the Court were to rule against WMATA in the instant action, Cubic would likely be barred from later challenging WMATA's failure to provide documents it requested as this Court would have

already decided the issue of whether or not they were disclosable under the PARP. *See John Doe #1 v. Glickman*, 256 F.3d 371, 378-79 (5th Cir. 2001)(finding that a party (the "Institute") seeking information through a Freedom of Information Act ("FOIA") request had the right to intervene in a reverse-FOIA action filed by the submitter of the information sought because "[i]f not allowed to intervene, the Institute would be prevented from ever being heard in a lawsuit that has the potential to end its quest to compel the [government] to disclose the [third party's information]. Moreover, that ruling could collaterally estop the Institute from relitigating the [i]ssue."). As such, Cubic is so situated that its legal interest may be impaired if it is not allowed to intervene.

F.    **No Existing Party Adequately Represents Cubic's Interest.**

Finally, WMATA cannot adequately represent Cubic's interest in this action. As this Court has said, the burden to show inadequate representation "is not 'onerous' because the applicant 'need only show that representation of his interest 'may be' inadequate.'" *Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1 at *10 (D.D.C. 2001)(citing *Dimond v. D.C.*, 792 F.2d 179, 192 (D.C. Cir. 1986)); *see also Glickman*, 256 F.3d at 381 ("Given the [intervenor's] minimal burden and USDA's duty to represent the broad public interest, not just the [intervenor's], we conclude that USDA's representation of the [intervenor] may be inadequate."). WMATA may not represent Cubic's interests, because, as the D.C. Circuit has ruled, government entities do not necessarily represent the financial interests of a private party regulated by the statute in dispute:

> A government entity . . . is charged by law with representing the public interest of its citizens. [The applicant for intervention], on the other hand, is seeking to protect a more narrow and 'parochial' financial interest not shared by the citizens [of that jurisdiction]. The [government] would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest. Since [the applicant's] interest cannot be

> subsumed within the shared interest of the citizens of [that jurisdiction], no presumption exists that the [government] will adequately represent its interests.

*Dimond*, 792 F.2d at 192-93; *Fund for Animals*, 32 F.3d at 737 (same).  Here, WMATA's interest is to disclose records to the public according to the PARP, but unlike Cubic, WMATA has no economic stake in the disclosure or the outcome of this action.[1]  In fact, if anything, WMATA has an economic interest directly contrary to Cubic's.  Cubic is seeking these documents in order to prepare its own claims for contract modifications and adjustments—some of which, if successful, might cost WMATA money.

Furthermore, Cubic now believes that ERG may have made defamatory statements about Cubic in its communications with WMATA based on language contained in ERG's Complaint.  *See, e.g.*, Compl. ¶ 47 ("Given Cubic's history, disclosure of the records and information as proposed by WMATA is likely to enable Cubic to interfere further with ERG's performance, to ERG's competitive disadvantage.").  Based on the language contained in ERG's Complaint Cubic now has a further legal and economic interest in obtaining the documents WMATA was going to produce; investigating whether ERG has defamed it—another interest that WMATA does not share.

Because WMATA's public interest may diverge from Cubic's private interest,  WMATA does not adequately represent Cubic's interests.  Thus, Cubic has met all five criteria of Rule 24(a), and should be  allowed to intervene.

---

[1] Cubic is seeking this information because it is planning to pursue claims similar to those pursued by ERG against the MTA and WMATA and hopes that these documents will assist with preparing their claims.  Cubic is not seeking the information to gain an economic, or any other, advantage against ERG.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD PERMIT CUBIC TO INTERVENE UNDER RULE 24(b).

In addition to recognizing Cubic's right to intervene under Fed. R. Civ. P. 24(a), the Court should permit Cubic to intervene under Fed. R. Civ. P. 24(b). That rule states:

> **Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). Cubic's defense in this matter—that WMATA, under the PARP, is allowed to disclose the documents Cubic seeks—shares a common question of law with the main action in this matter, i.e., an interpretation of PARP. *See, e.g.*, Compl. ¶ 49 ("Because it proposes to disclose confidential or privileged commercial or financial information exempt from disclosure under PARP § 6.14, WMATA's October 11, 2007 determination is without authority, arbitrary, capricious, and abuse of discretion, and contrary to federal law. . .").

Furthermore, the Court could allow intervention by Cubic without unduly delaying or prejudicing the adjudication of the rights of ERG or WMATA. The Answer has just been filed, by WMATA discovery has not yet begun—Cubic's intervention would not delay a litigation which has just begun. Thus, because Cubic's defense focuses on the same provision of law as ERG's claim and because intervention would not delay or prejudice this adjudication, the Court should permit Cubic to intervene under Rule 24(b). If allowed to intervene, the attached Answer will be filed by Cubic.

**Conclusion**

For these reasons, Cubic requests that the Court grant their Motion for Intervention.


Dated:  December 3, 2007                    WILEY REIN LLP


Rodney H. Glover
Bar No. 387257
1776 K Street, N.W.
Washington, DC  20006
Telephone:  (202) 719-7381
Facsimile:  (202) 974-1426
Email: rglover@wileyrein.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December, 2007 a copy of the foregoing document was served electronically and by first class mail upon the following:

Benjamin J. Lambiotte, Esq.
Matthew C. Hoyer, Esq.
Robert A.W. Boraks, Esq.
GARVEY SCHUBERT BARER
1000 Potomac Street, NW
Fifth Floor
Washington, DC  20007
Telephone: (202) 965-7880
Fax: (202) 965-1729
Email: blambiotte@gsblaw.com

Phillip T. Staub, Esq.
Washington Metropolitan Transit Authority
600 5th Street, N.W.
Washington, DC  20007
Telephone: (202) 962-2555
Email: pstaub@wmata.com

Rodney H. Glover

# ATTACHMENT 1



**(Board Copy)**
**Washington Metropolitan Area Transit Authority**
# METRO ELECTRONIC ACTION DOCUMENT

| IDENTIFICATION | | | |
|---|---|---|---|
| MEAD ID: | 90577 | ACTION: | Modify |
| AWARD VALUE: | $200,000.00 | CONTRACT: | C05034 |
| FUND SOURCES:<br>(View) | Operating Funds | CONTRACTOR: | ERG Transit Systems ( USA) Inc.<br>1800 Sutter Street<br>Suite 900<br>Concord, CA 94520 |
| LAST MODIFIED: | 04/15/2005 | | |

| DESCRIPTION | |
|---|---|
| SUBJECT: | Modify RCSC SmarTrip contract to increase support staff so as to improve customer service. |
| PURPOSE: | To gain Board of Directors approval to modify Contract C05034 with ERG Transit Systems to reimburse the contractor for additional operating costs at the Regional Customer Service Center (RCSC) incurred due to unanticipated SmarTrip® card sales volumes and a corresponding increase in customer service and card management activities |

| ORIGINATION | | | |
|---|---|---|---|
| INITIATOR | | DEPARTMENTAL APPROVAL | |
| CHRISTIAN BERES on 02/18/2005 | | Approved by AGOURIDIS , LEONA    02/25/2005 | |
| PHONE: | 202-962-2707 | OFFICE: | FARE | DEPT: | Communications |

| COORDINATION (ROUTING) | | |
|---|---|---|
| OFFICE | NAME | ACTION/DATE |
| STRK (6210) | BOND, MURRAY | Approved 02/24/2005 |
| AGMC (6100) | AGOURIDIS, LEONA | Approved 02/25/2005 |
| AUDT (7210) | STEWART, JAMES | Approved w/ Comments 02/25/2005 |
| PRMT (7400) | ZINGALE, JAMES | Approved 03/08/2005 |
| COUN (1410) | O'KEEFFE, CAROL | Approved w/ Comments 03/09/2005 |
| BEMR (7600) | WILKINS, PAMELA | Approved 03/23/2005 |

| FINAL APPROVALS | |
|---|---|
| OFFICE | NAME/ACTION |
| BEMR | Approved for BEMR by PAMELA WILKINS  on 03/09/2005 |
| GM | GMGR CEO  (Not Yet Approved) |
| BEMR | Approved for BEMR by PAMELA WILKINS  on 03/23/2005 |
| GM | Approved for GMGR by GMGR CEO on 04/13/2005 |
| BOARD | BOARD WMATA  (Not Yet Approved) |



**Washington Metropolitan Area Transit Authority**
# METRO ELECTRONIC ACTION DOCUMENT

### NARRATIVE

**Background and Discussion:**

ERG and its subcontractor, Northrop Grumman, assumed operation of the Reston-based RCSC last June. Concurrent with that undertaking, WMATA instituted cashless parking, whereby parking fees could only be paid with a SmarTrip® card. Monthly SmarTrip® card sales, which totaled 13,696 in May 2004, grew nearly fivefold between July and December 2004—averaging 60,462 cards per month. Moreover, calls to the customer RCSC, that ranged around 6,000 per month before cashless parking, climbed to over 13,000 a month in both December and January. As a result of this increased activity, the contractor has and continues to incur additional labor and related operating costs, such as telecommunications and postage, generated by the explosion in card sales. The contractor requested payment for the additional staff and operating costs, and these costs have been audited by the WMATA Auditor General. WMATA issued two modifications to cover these costs through March 2005. Staff is now seeking Board approval for $200,000 to cover these additional operating costs through the end of the current fiscal year, June 30, 2005.  The following table outlines the level of card sales and volume increase over the past eight months, and superimposes the overtime costs incurred todate:

| Month | Card Sales | Call Volume | Overtime |
|-------|-----------|-------------|----------|
| Apr-2004 | 10,979 | 6,000 | $0 |
| May-2004 | 14,054 | 6,000 | $0 |
| Jun-2004 | 41,914 | 6,000 | $0 |
| Jul-2004 | 74,017 | 15,781 | Mod 3  $50K |
| Aug-2004 | 57,668 | 11,423 | " |
| Sep-2004 | 66,193 | 11,398 | " |
| Oct-2004 | 54,648 | 11,887 | Mod 4 $145K |
| Nov-2004 | 48,212 | 11,967 | (up to COB March) |
| Dec-2004 | 52,805 | 13,139 | " |
| Jan-2005 | 44,844 | 13,822 | " |
| Feb-2005 | 43,660 | 13,203 | " |

As initially contracted, the RCSC was to provide a number of distinct functions: customer service, card management, financial clearing and settlement and customer features (e.g. automatic renewal of fare value, or Autoload). The start-up phase of the contract envisioned deployment of all of these functions simultaneously on July 21, 2004, and the contractor was to receive specific payments for each of these functions based on formulas set forth in the base contract. This payment method was designed to provide the contractor with sufficient revenues to increase RCSC staffing and operating costs as needed as the card base and associated customer services activities increased over time.

The contractor has been unable to recoup these additional costs through the base contract payment formulas because all contract elements are not in force due to the delays described below.

Delays in deploying all elements of the RCSC were caused by the need to develop an interface specification defining communication formats between the two contractors' (ERG and Cubic) computer systems and a change in the method of financial clearing. Consequently, the start up RCSC was launched

in June 2004 with only two functions, customer service and card management, which entailed a corresponding decline in payments to the contractor. This request is for $200,000 in additional contracting authority through June 30, 2005.

**Alternatives:**

The alternative to payment for additional staffing and operating costs at the RCSC, driven by unanticipated card sales since the launch of cashless parking last June, is to not reimburse the contractor for these operating costs. Without reimbursement, the contractor would likely reduce staff, resulting in a steep decline in service and corresponding increase in customer dissatisfaction.

**Prior Approvals:**

On January 16, 2003 the Board of Directors approved award of the Regional Customer Service Center Contract to ERG which included operating costs in the amount of $12,101,276 for the period of FY04 thru FY08, subject to annual Board approval.

Contract Modification No. 003 in the amount of $50,000 and Contract Modification No. 004 in the amount of $145,000 were issued on September 14, 2004, and December 8, 2004, respectively, for additional RCSC labor. The period covered by these two modifications began on July 1, 2004, and will end on March 31, 2005.

**Impact on Funding:**

Budget:                    Operating Budget, Fiscal 2005

Location:                  Department of Communications

Account:                   SmarTrip® Operations

FY05 Operating Budget

Pg. 89—Marketing

Services Other Budget = $2,296,700

Spent YTD = $1,064,127

This Action = $80,000

Remaining Funds = $1,152,573


Materials Budget = $187,600

Spent YTD = $17,716

This Action = $45,000

Remaining Funds = $124,884

FY05 Operating Budget

Pg. 92—Customer Service

Services Other Budget = $320,000

Spent YTD = $84,319

This Action = $75,000

Remaining Funds = $160,681

Total Action: $200,000

Remark: There are sufficient funds available in the Department of Communications budget to support this action.

## Schedule:

There is no schedule impact to the C05034 contract as a result of this change to reimburse direct labor and related operating costs.

## Affirmative Action:

Equal Employment Opportunity: Contractor will comply with Executive Order 11246, Revision 4.

## Disadvantaged Business Entreprise:

Contractor will comply with DBE goal of 6%

## Recommendation:

It is recommended the Board of Directors approve modification of Contract C05034 to allow reimbursement of $200,000 in additional operating costs at the Regional Customer Service Center (RCSC) incurred and forecast to continue due to unanticipated SmarTrip® card sales volumes.

# ATTACHMENT 2

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

**CONTRACT AUDIT REPORTS**

Date And
Report No.                    **Subject of Report and Summary**

**PRENEGOTIATION AUDITS:**

July 8, 2004
AUD-05-001              **Prenegotiation Audit of Revised Proposal Submitted by
                        Primo Electric Company, Contract FI4398, PCO No. 001,
                        AC Switchgear Replacement and Delay Costs**

Audit of the Contractor's credit proposal in the amount
of $1,071,569 results in recommended audit
adjustments of $406,467 primarily due to the
following:

- $202,485 increase to the proposed credit due
  to excess escalation proposed for labor.

- $68,751 which represents project management
  costs already included in the indirect cost rate.

- $99,189 in mark-ups related to the escalation
  and project management proposed
  adjustments.

Additional adjustments may be necessary as a result
of technical evaluation.

Current Status:
PCO No. 001 has been negotiated in the credit
amount of $1,422,999 using the results of our
audit and applying technical considerations.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 1 of 26**

**QUARTERLY REPORT**
**ON**
**FIRST QUARTER OF FY 2005**

**CONTRACT AUDIT REPORTS**

**Date And**
**Report No.**                    **Subject of Report and Summary**

**July 26, 2004**
**AUD 05-003**              **Audit of Revised Proposal Submitted by Alstom**
                           **Signaling, Inc., Pilot Project For Eight-Car Train**
                           **Precision Station Stopping, Request For Proposals**
                           **GP4002 AM03**

                           Audit of the Contractor's $1,583.619 revised proposal
                           results in recommended audit adjustments of $61,936
                           primarily due to a decrease in the proposed bond
                           amount.

                           Additional adjustments may be necessary as a result
                           of technical evaluation and final negotiations.

                           Current Status:
                                  Proposal has been negotiated in the amount of
                                  $1,395,779 using the recommended audit
                                  adjustments and technical considerations.

**July 27, 2004**
**AUD 05-004**              **Audit of Alternative Proposal for 64 Media and Fare Fair**
                           **Options, Plus Other Options Submitted by Cubic**
                           **Transportation Systems, Inc., Contract C44444,**
                           **POS/DNC and Rail Upgrade**

                           Audit of the Contractor's proposals in the amount of
                           $5,687,317 results in recommended audit
                           adjustments of $334,608 primarily due to the
                           following:

                           • $28,100 reduction due to excessive labor
                             escalation.

                           • $163,272 in recommended adjustments to
                             indirect rates.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 2 of 26**

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

## CONTRACT AUDIT REPORTS

**Date And
Report No.**                                    **Subject of Report and Summary**

**AUD 05-004
(Con't)**

- $34,423 reduction to excessive shipping costs proposed.

- $122,987 reduction in mark-ups as a result of these recommended adjustments.

Cubic is in the process of preparing its forecasts for FY 2005 indirect rates. When they have completed the forecasts, they will furnish them to us for our review and comparison to FY 2003 actuals. We will make a determination whether further adjustment and/or recommendations should be made as appropriate.

Additional adjustments may be necessary as a result of technical evaluation and updated indirect rates information to be furnished.

Current Status:
    To Be Negotiated

**August 6, 2004
AUD 05-005**                                    **Audit of Revised Proposal Submitted by Johnson Controls, Inc., Subcontractor to Joshua Construction, Inc., Contract 1G0042, PCO No. 003, Jet Fans and Tunnel Ventilation**

Audit of the Subcontractor's $476,877 revised proposal results in recommended audit adjustments of $5,994 primarily due to overstated material costs.

Additional adjustments may be necessary as a result of technical evaluation.

Current Status:
    Negotiations are currently in process.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 3 of 26**

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

CONTRACT AUDIT REPORTS

**Date And**
**Report No.**                        **Subject of Report and Summary**

**August 17, 2004**
**AUD 05-006**            **Audit of Proposal Submitted by Mantech Security Technologies Corporation, Contract FRS259, Task Order No. 020, Assistance for Blanket Purchase Agreement, PROTECT System Comprehensive Maintenance Program**

Audit of the Contractor's proposal in the amount of $8,015,996 results in a recommended net upward audit adjustment of $23,285 primarily due to the following:

- $110,568 reduction due to our recommended exclusion of servers proposed for years two to five for option one.

- $120,075 increase due to mathematical errors made by the Contractor and Subcontractor, LiveWave, Inc.

Additional adjustments may be necessary as a result of technical evaluation.

Current Status:
To Be Negotiated

**September 2, 2004**
**AUD 05-007**            **Prenegotiation Audit of Proposal Submitted by Adrian L. Merton, Inc., Contract No. FH8126, PCO No. 003, Multi-Year Drainage Pump Station (DPS), Replacement of DPS, Changes in Hours of Work for Installation and Delay Costs**

Audit of the Contractor's $600,678 proposal results in net recommended audit reductions of $36,519 primarily due to the following:

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 4 of 26**

**QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005**

<u>**CONTRACT AUDIT REPORTS**</u>

**Date And
Report No.**

<u>**Subject of Report and Summary**</u>

**AUD 05-007
(Con't)**

- $9,600 in reduction of proposed subcontractor costs due to a computation error by one of the Subcontractors.

- $25,532 reductions to labor fringes, home office G&A and payroll burden of the prime Contractor as a result of adjustments to proposed rates.

Additional adjustments may be necessary as a result of technical evaluation.

Current Status:
Negotiations are currently in process.

**September 2, 2004
AUD 05-008**

**Audit of Revised Proposal Submitted by Jacobs Civil, Inc., Subcontractor to Lane, Granite, Slattery, (AJV), Contract 1G0042, PCO No. 003, Jet Fans and Tunnel Ventilation**

Audit of the Subcontractor's $541,101 revised proposal results in recommended audit adjustments of $88,166 primarily due to the following:

- $65,190 reduction due to overstated home office overhead rate.

- $22,922 reduction to back-up/documentation preparation costs which should be part of overhead costs rather than charged as a direct cost.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 5 of 26**

**QUARTERLY REPORT**
**ON**
**FIRST QUARTER OF FY 2005**

**CONTRACT AUDIT REPORTS**

**Date And**
**Report No.**                           **Subject of Report and Summary**

**AUD 05-008**
**(Con't)**                 Additional adjustments may be necessary as a result
                            of technical evaluation.

                            Current Status:
                                Negotiations are currently in process.

**September 7, 2004**
**AUD 05-009**           **Audit of Revised Proposal Submitted by Lane, Granite,**
                        **Slattery, A Joint Venture, Contract 1G0042, PCO No. 001,**
                        **Maryland   Department   Of   Environment   Revised**
                        **Requirements**

                            Audit of the Contractor's $1,250,513 proposal results
                            in recommended audit adjustments of $170,702.  The
                            audit adjustments are primarily due to the following:

                            • $114,741 reduction to various subcontract
                              costs.

                            • $10,214 reduction due to equipment rate
                              adjustments.

                            • $13,216 reduction due to material unit price
                              adjustments.

                            Additional adjustments may be necessary as a result
                            of technical evaluation.

                            Current Status:
                                PCO No. 001 has been negotiated in the
                                amount of $1,077,000 using the recommended
                                audit adjustments and technical
                                considerations.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 6 of 26**

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

**CONTRACT AUDIT REPORTS**

**Date And
Report No.**                    **Subject of Report and Summary**

**September 27, 2004
AUD 05-010**            **Audit of Proposal Submitted by Lane, Granite, Slattery,
A Joint Venture, Contract 1G0042, PCO No. 003, Jet
Fans and Tunnel Ventilation**

Audit of the $10,430,715 proposal for Jet Fans and
Tunnel Ventilation results in recommended audit
adjustments of $3,099,273.

We recommend:

- $204,142 in adjustments to formwork direct costs
  since actual verified costs incurred were less than
  the estimated costs submitted in the proposal.

- $1,460,695 in adjustments for two subcontractors.
  The reports for subcontractors are being prepared
  separately.

- $699,005 in adjustments to job office indirect costs
  that represent costs that were dedicated to the
  contract and thus were not affected by the change.

- $100,309 is adjusted for payroll taxes which are
  included in the costs as part of the overhead labor
  amount.

- $458,877 is adjusted regarding mark-ups on the
  proposed other costs.

Additional adjustments may be necessary as a result
of technical evaluation of the quantities used to
compute the unit pricing for direct costs and for the
proposed quantities.

Current Status:
Negotiations are currently in process.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 7 of 26**

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

<u>CONTRACT AUDIT REPORTS</u>

**Date And**
**Report No.**                                    <u>Subject of Report and Summary</u>

**September 28, 2004**
**AUD 05-011**                    **Audit of Proposal Submitted by Truland/Walker Seal, A Joint Venture, Subcontractor to Johnson Controls, Inc., Contract 1G0042, PCO No. 003, Jet Fans and Tunnel Ventilation**

Audit of the Subcontractor's $543,693 proposal results in recommended audit adjustments of $160,797 and an amount for resolution of $92,034. A summary of the major adjustments and the amount for resolution is as follows:

We recommend:

- $58,157 reduction to wages, fringes and burden as a result of using the weighted average rates rather than the estimated rates proposed.

- $33,221 reduction in job office indirect costs as a result of using a lower percentage rate based on the results of audit.

- $42,703 reduction for G&A as a result of using a lower G&A rate per Audit.

- $92,034 as an amount for resolution representing the proposed material and equipment plus markups for which Truland declined to provide support.

We ascertained that the Johnson Controls, Inc. negotiated amount of $508,000 is overstated between $125,104 and $217,138 depending on the outcome of the Subcontractor's decision to furnish documentation for the material and equipment costs.

Current Status:
Negotiations are currently in process.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 8 of 26**

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

<u>CONTRACT AUDIT REPORTS</u>

**Date And**
**Report No.**                    <u>Subject of Report and Summary</u>

**September 28, 2004**
**AUD 05-012**          **Audit of Proposal  Submitted  by Joshua Construction, Inc., Subcontractor  to  Lane, Granite, Slattery, A  Joint Venture, Contract 1G0042, PCO No. 003, Jet Fans and Tunnel Ventilation**

Audit of the Subcontractor's $2,018,974 proposal results in recommended audit adjustments of $544,111. The audit adjustments are primarily due to adjustments to second tier subcontractor costs and Joshua's indirect costs as follows:

- $331,977 reduction to the fan control subcontract. This amount includes an amount for resolution of $92,034.

- $86,163 reduction to the sheet metal subcontract.

- $55,552 net reduction to Joshua's indirect costs due primarily to the reductions to the subcontract costs.

Additional adjustments may be necessary as a result of technical evaluation of the quantities used to compute the unit costs for direct costs and for the proposed quantities.

Current Status:
Negotiations are currently in process.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 9 of 26**

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

**CONTRACT AUDIT REPORTS**

**Date And
Report No.**

**Subject of Report and Summary**

**September 29, 2004
AUD 05-013**

**Audit of Proposal Submitted by Truland Walker Seal, A Joint Venture, Subcontractor to Lane, Granite, Slattery, A Joint Venture, Contract 1G0042, PCO No. 003, Jet Fans and Tunnel Ventilation**

Audit of the Subcontractor's $2,385,000 proposal results in recommended audit adjustments of $1,128,670. The audit adjustments are primarily due to adjustments related to a computation error and reductions to the proposed job office indirect cost rate and the home office G&A rate as follows:

- $774,330 of the recommended adjustment is the result of a computation error in the Subcontractor's proposal.

- $82,745 of the recommended adjustment is the result of our use of a reduced job office indirect cost rate as a result of Audit.

- $117,589 of the recommended adjustment is the result of our use of a reduced home office G&A rate as a result of Audit.

Additional adjustments may be necessary as a result of technical evaluation of the quantities used to compute the unit pricing for direct costs and for the proposed quantities.

Current Status:
Negotiations are currently in process.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**

**QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005**

**CONTRACT AUDIT REPORTS**

**Date And
Report No.**

**Subject of Report and Summary**

**DELAY CLAIM:**

**July 15, 2004
AUD-05-002**

**Audit of Delay Claim Submitted by ERG Transit Systems, Inc., Contract CO5034, SmarTrip Regional Customer Service Center Delay Claim – 238 Days**

Audit of the Contractor's $1,185,401 delay claim results in potential adjustments of $545,071 primarily due to decreases in direct labor costs and other indirect costs as follows:

- $509,356 reduction due to excess labor hours claimed, excessive labor and indirect rates proposed.

- $35,715 reduction due to excessive other costs either as being duplicative or excessive costs.

Additional adjustments may be necessary as a result of technical evaluation of the claim.

Current Status:
    To be negotiated.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY
Page 11 of 26**

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS

**Date And**
**Report No.**                    **Subject of Report and Summary**

**AUDITS OF RATES:**

**C 05-002**
**July 08, 2004**          **Audit of Proposed Rates Submitted by DMJM+Harris, Inc.,**
                          **Contract DMJM05, Integrated Annual Work Plan, FY 2005**
                          **Architect/Engineering Consultant Services**

Audit of labor and overhead rates for FY 2005
services results in determination that the proposed
labor rates are reasonably stated.

We recommend minor adjustments to the proposed
home and field office overhead rates to exclude
certain unallowable expenses in accordance with the
Federal Acquisition Regulations.

**C 05-013**
**July 26, 2004**          **Audit of Rates Submitted by Sidhu Associates, Inc.,**
                          **Subcontractor to Parsons, Brinckerhoff, Quade &**
                          **Douglas, Inc., IAWP Task Orders, Fiscal Year 2005**

Audit of labor and overhead rates for FY 2005
services results in determination that the proposed
labor rates are reasonably stated.

However, based upon historical wage rate increases
and trends analysis, we recommend reduction of the
proposed escalation rate to a lower effective rate.

In addition, we recommend adjustment of the
proposed home office overhead rate to exclude
certain excessive indirect labor costs.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 12 of 26**

# QUARTERLY REPORT
## ON
## FIRST QUARTER OF FY 2005

## CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS

**Date And
Report No.**                              **Subject of Report and Summary**

**C 05-019
August 06, 2004**        **Audit of Proposed Rates Submitted by Booz Allen Hamilton, Inc., Contract FG1451, Integrated Annual Work Plan, FY 2005 Vehicle Engineering Consultant Services**

> Audit of labor and overhead rates for FY 2005 services results in determination that the proposed labor rates are reasonably stated.

> We recommend reduction of proposed annual salary escalation to a previously negotiated rate that approximates current salary escalation trends.

> Our audit of indirect cost multiplier rates results in determination that these rates are consistent with Defense Contract Audit Agency provisional rates for FY 2005 and are reasonable for developing rates for the billing of proposed consultant services.

**C 05-022
August 23, 2004**        **Audit of Hourly Billing Rate Submitted by Thomas Dorrier, Contract FI5583, Disputes Review Board Legal Services**

> Audit of labor and overhead rates proposed for disputes review board legal services results in determination that the proposed labor rate is reasonably stated and that the proposed overhead rate required adjustment to exclude expenses of a personal nature.

**C 05-026
August 31, 2004**        **Audit of Rates Submitted by RRR Engineering, Inc., Subcontractor to Parsons, Brinckerhoff, Quade & Douglas, Inc., IAWP Task Orders, Fiscal Year 2005**

> Audit of labor and overhead rates for FY 2005 services results in determination that the proposed labor rates are reasonably stated.

## THIS DOCUMENT IS FOR INTERNAL USE ONLY

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS

| Date And Report No. | Subject of Report and Summary |
|---|---|

**C 05-026 (Con't)**

Our audit of proposed home and field office overhead rates results in recommended reductions to exclude certain unallowable expenses in accordance with the Federal Acquisition Regulations.

**C 05-031**
**September 09, 2004**      **Audit of Rates Submitted by Versar, Inc., Environmental Engineering Services, Contract C04118**

Audit of labor and overhead rates for FY 2005 services results in determination that the proposed labor rates are reasonably stated.

We recommend reduction of proposed annual salary escalation to a rate that approximates current salary escalation trends.

Our audit of indirect cost rates results in determination that these rates are consistent with Defense Contract Audit Agency provisional rates and are reasonable for developing rates for the billing of proposed consultant services.

Due to absence of an approved accounting change for billing of P.C. LAN costs, the proposed hourly P.C. LAN rate was not approved.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

**CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS**

**Date And
Report No.**                    **Subject of Report and Summary**

**PRENEGOTIATION AUDITS:**

**C 05-003
July 08, 2004**          **Audit of Sole Source Proposal Submitted by Calibre Systems, Inc., Services for Operating Budget System MEAD No. 72188 - $150,000**

Audit of Contractor's proposal in the amount of $150,000 results in determination that proposed amount was computed using GSA Schedule pricing and is reasonably priced per the Proposal Analysis criteria of the Federal Acquisition Regulation Part 15.404-1(b)(2)(vi) and no change in the proposed price is necessary.

Current Status:
PRMT negotiated sole source proposal at the proposed amount and audit results were accepted and followed in settlement.

**C 05-020
August 09, 2004**        **Audit of Proposal Submitted by Mitsui (USA), Inc., Repair of Bearing Bracket Bores, Contract F05032, Modification No. 008**

Audit of the proposed unit price to repair the bores on traction motor bearing brackets results in recommended reduction of excess Subcontractor profit mark-up and related Contractor mark-ups for overhead and profit, for a total recommended reduction of $17 per unit price.

Current Status:
Final negotiations have not been completed pending resolution of a warranty issue.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 15 of 26**

## QUARTERLY REPORT
## ON
## FIRST QUARTER OF FY 2005

## CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS

**Date And**
**Report No.**                        **Subject of Report and Summary**

**C 05-024**
**August 31, 2004**         **Audit of Proposal Submitted by Mitsui (USA), Inc., Spare**
                            **Part: Rotor Assembly (Qty 10), Contract F05032,**
                            **Modification No. 006**

                            Audit of the proposed unit price to furnish spare rotor
                            assembly part for quantity up to ten units results in
                            recommended reduction of excessive Subcontractor
                            profit mark-up and related Contractor mark-ups for
                            overhead and profit, for a total recommended
                            reduction of $857 per unit price for a total
                            recommended reduction of $8,570 for the 10 units.

                            Current Status:
                            Final negotiations have not been completed
                            pending resolution of a warranty issue.

**C 05-025**
**August 31, 2004**         **Audit of Proposal Submitted by Mitsui (USA), Inc., Spare**
                            **Part: Stator Core (Qty 10), Contract F05032, Modification**
                            **No. 006**

                            Audit of the proposed unit price to furnish spare stator
                            core part for quantity up to ten units results in
                            recommended reduction of excessive Subcontractor
                            profit mark-up and related Contractor mark-ups for
                            overhead and profit, for a total recommended reduction
                            of $930 per unit price for a total recommended
                            reduction of $9,300 for the 10 units.

                            Current Status:
                            Final negotiations have not been completed
                            pending resolution of a warranty issue.

## THIS DOCUMENT IS FOR INTERNAL USE ONLY

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

**CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS**

**Date And
Report No.**                     **Subject of Report and Summary**

**C 05-027
September 02, 2004**    **Audit of Proposal Submitted by Keystone Plus Construction Corporation, Contract FM5204, PCO No. 001**

Audit of $49,616 credit proposal to furnish 595 series "Thermacore" door in lieu of specified 418 series door results in determination that credit amount is based upon difference in price between the doors and is reasonably stated.

Current Status:
PRMT negotiated PCO No. 001 at the proposed amount and audit results were accepted and followed in settlement.

**C 05-028
September 03, 2004**    **Prenegotiation Audit of Proposal Submitted by Potomac Construction Company, Inc., Contract FL0018, Modification No. 081**

Audit of the Contractor's $1,232,928 proposal to remove and replace roofs on Buildings D and E at the Carmen Turner Facility results in recommended net reductions of $27,827 to exclude unsupported job office indirect costs and to apply the audited home office G&A rate.

Current Status:
Negotiations are currently in process.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY
Page 17 of 26**

## QUARTERLY REPORT
## ON
## FIRST QUARTER OF FY 2005

### CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS

**Date And
Report No.**                          **Subject of Report and Summary**

**C 05-029
September 07, 2004**          **Prenegotiation Audit of Proposal Submitted by Potomac
                              Construction    Company,    Inc.,    Contract    FJ5899,
                              Modification No. 047**

                                            Audit of the Contractor's $178,369 proposal to
                                            relocate diesel fuel lines at the Northern Bus Garage
                                            results in recommended net reductions of $3,964 to
                                            exclude unsupported job office indirect costs and to
                                            apply the audited home office G&A rate.

                                            Current Status:
                                                  Negotiations are currently in process.


**C 05-030
September 07, 2004**          **Prenegotiation Audit of Proposal Submitted by Potomac
                              Construction Company, Inc., Contract FJ5899, OFS-04-013**

                                            Audit of the Contractor's $239,703 proposal for
                                            rehabilitation of fire protection pipes at the Union
                                            Station Metro Rail Station results in recommended net
                                            reductions of $3,928 to exclude unsupported job office
                                            indirect costs and to apply the audited home office G&A
                                            rate.

                                            Current Status:
                                                  Negotiations are currently in process.


**C 05-032
September 24, 2004**          **Audit of Proposal Submitted by Schindler Elevator Corp.,
                              Emergency Stop – Pedestal and Directional Indicators
                              (134 Escalators), Contract FJ0956, PCO No. 004**

                                            Audit of the Contractor's $188,136 proposal to replace
                                            the base contract pedestal with a pedestal that includes
                                            a directional indicator results in recommended
                                            reductions of $7,772 subject to technical evaluation.


### THIS DOCUMENT IS FOR INTERNAL USE ONLY
### Page 18 of 26

**QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005**

**CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS**

**Date And
Report No.**                                    **Subject of Report and Summary**

**C 05-032
(Con't)**                              Adjustments are as a result of using the applicable
audited indirect rate and disallowance of the proposed
tool and bond rates because these rates are included
in the audited indirect rate.

Current Status:
        To be negotiated.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY
Page 19 of 26**

QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005

**CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS**

**Date And**
**Report No.**                          **Subject of Report and Summary**

**CAPITAL TRANSIT CONSULTANTS (CTC) PROPOSALS:**

**C 05-007**
**July 15, 2004**            **Audit of Proposal Submitted by Capital Transit Consultants, For FY 2004 Task Order Services, Task Order No. 04-3Z800A-IRP-22, Design for New Operations Control Center At Carmen Turner Facility**

Audit of the $893,241 proposal from the Capital Transit Consultants for FY 2004 task order services results in a recommended audit adjustment of $6,481. The reduction relates to adjustments to the billing rate of one of the Contractor's employees and the labor and overhead costs of four subcontractors.

Current Status:
Proposal has been negotiated in the amount of $741,125 using the recommended audit adjustments and technical considerations.

**C 05-009**
**July 20, 2004**            **Audit of Proposal Submitted by Justice & Sustainability Associates, LLC, Subcontractor to DMJM/DeLeuw Cather AJV, Contract DMJM04, FY 2004 Integrated Annual Work Program, Management Consulting Services**

Audit of Subcontractor's proposal in the amount of $58,094 consists of rates for several subconsultants who will be working on the proposal.

Our audit results in recommended adjustments of $2,510 due to reduction of proposed billing rates to standard billing rates for two of the subconsultants and use of the GSA rate schedule for a third subconsultant.

Current Status:
To be negotiated.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**

**QUARTERLY REPORT**
**ON**
**FIRST QUARTER OF FY 2005**

**CONTRACT AUDIT MEMORANDA ON PRICING PROPOSALS**

**Date And**
**Report No.**                    **Subject of Report and Summary**

**C 05-012**
**July 26, 2004**        **Audit of Proposal Submitted by Capital Transit**
                **Consultants, For FY 2004 Task Order Services, Task**
                **Order No. 04-3Z800B-BPPD-3, Silver Spring Transit Center**
                **Concept Design and Preliminary Field Investigation**

                Audit of the $300,704 proposal from the Capital
                Transit Consultants for FY 2004 task order services
                results in a recommended audit adjustment of $8,081.

                The reduction relates to audit adjustments of the
                Contractor's and Subcontractor's employee labor and
                overhead costs.

                Current Status:
                    Proposal has been negotiated in the amount of
                    $292,623 using the recommended audit
                    adjustments.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 21 of 26**

**QUARTERLY REPORT**
**ON**
**FIRST QUARTER OF FY 2005**

**CONTROL SELF ASSESSMENT REPORT**

**Date And**
**Report No.**                    **Subject of Report and Summary**

**July 27, 2004**
**CSA 05-001**        **Improving Internal Customer Service as Evaluated by the
Office of Procurement and Materiels Management, Materiels
Support Services and the Department of Operations,
Maintenance Offices**

This report summarized the concerns, issues and
recommendations made by 31 participants from the Office of
Procurement and Materiels Management, Materiels Support
Services and the Department of Operations, Maintenance
Offices.

The participants' objective was to improve internal customer
service. The sub-objectives were to improve the working
relationship among PRMT, the various Maintenance offices,
and other departments and offices, to improve the work
process, identify areas of strengths and weaknesses for
resolution, and suggest ideas for improvement.

The participants identified five areas of concern that they feel
need to be addressed. These are:

- Safety Concerns

  ➢ Improvements needed processing Material Safety
    Data Sheets

- Difficulties Experienced in Performing Duties

  ➢ Stock objectives and reorder parts can be improved

  ➢ Inventory planning and forecasting by heavy overhaul
    and special projects need improvement

  ➢ Documentation of heavy overhaul and special
    projects needs improvement

  ➢ Part identification needs improvement

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 22 of 26**

**QUARTERLY REPORT**
**ON**
**FIRST QUARTER OF FY 2005**

**CONTROL SELF ASSESSMENT REPORT**

**Date And**
**Report No.**                    **Subject of Report and Summary**

**CSA 05-001**
**(Con't)**

        ➢ Requests for parts to support new equipment need improvement

        ➢ PRMT needs to consider alternative purchasing methods

        ➢ Expediting purchase orders needs improvement

- Supporting Documentation for Contract Spares Needs Improvement

- Storeroom Operations Needs Improvement

        ➢ Stock clerks are needed on the evening and midnight shifts including the weekends to support operations

        ➢ Documentation of storeroom issues needs improvement

        ➢ Maintenance offices need to adhere to procedures for the transfer of materials

- Communication of Authorization and Approval to Delete Inventory Needs Improvement

The participants made several observations of their concerns and made 44 recommendations for consideration.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 23 of 26**

## QUARTERLY REPORT
## ON
## FIRST QUARTER OF FY 2005

## <u>INTERNAL AUDIT ADVISORY REPORTS</u>

**Date And**
**<u>Report No.</u>**                    **<u>Subject of Report and Summary</u>**

**September 27, 2004**
**AUD-05-A0001**         **Review of Purchase Card**

A temporary employee who worked in ODEV obtained the office's purchase card number and made an unauthorized purchase. The item cost $20.67. The temporary employee wrote a check to WMATA as reimbursement for the unauthorized purchase. Due to this occurrence, the Purchase Card Administrator requested us to conduct an audit of purchase card transactions made in ODEV.

The objectives of the audit were to determine if the unauthorized purchase was made by the temporary employee, ensure that all purchases were supported and conformed to the Purchase Card Program Policy and Procedures and internal controls were in place and followed.

We reviewed 350 transactions that totaled $109,870. We found no other instances of unauthorized purchases. But we did note several internal control weaknesses and made 6 recommendations to strengthen the controls.

**September 27, 2004**
**AUD-05-A0002**         **Compliance    Review    of    ADMT    Processes    and Documentation for the Independent Cost Estimates**

Audit of the Office of Administration (ADMT) independent cost estimate function disclosed that they are adequately performing their objectives but we note that several improvements can be made.

We recommended that:

- All requests for an independent cost estimate should be coordinated and certified by ADMT's representatives.

- ADMT staff should develop or acquire a standard unit price data base to be used in preparing all the Authority's independent cost estimates.

## THIS DOCUMENT IS FOR INTERNAL USE ONLY
### Page 24 of 26

**QUARTERLY REPORT
ON
FIRST QUARTER OF FY 2005**

<u>**INTERNAL AUDIT ADVISORY REPORTS**</u>

**Date And
Report No.**                         <u>**Subject of Report and Summary**</u>

**AUD-05-A0002
(Cont'd)**

- A follow-up process should be put into place to review all independent estimates that contain variances that are materially different from the Authority's budget or final negotiated price.

- Procedures should be put into place so that all individuals involved with the preparation of independent cost estimates do not have access or rely on the contractor's proposal or bid documents when preparing the estimates.

ADMT's representatives have agreed with our findings and are currently drafting policies and procedures that will incorporate our findings and recommendations.

**September 30, 2004
AUD-05-A0003**           **Compliance Review of PRMT Contract Administration and Documentation for Contracts FJ-5899 and FL-0018**

We reviewed Orders for Services issued under the two job order contracts to evaluate the adequacy of the contract administration and documentation of the contracts.

We noted that the job order contracts provide for a cost efficient type of procurement by means of reducing time and paperwork in procuring competitively bid, firm fixed price, indefinite quantity services.

Based upon our audit, we conclude that these job order contracts have been effectively administered by the IRPG and ADMT staff and made several recommendations for improvement.

We recommended that:

- The scope for services under these contracts with respect to labor should be written to contain performance measures that are specific to the Authority's needs.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY
Page 25 of 26**

**QUARTERLY REPORT**
**ON**
**FIRST QUARTER OF FY 2005**

**INTERNAL AUDIT ADVISORY REPORTS**

**Date And**
**Report No.**
**AUD-05-A0003**
**(Cont'd)**

**Subject of Report and Summary**

- Standard indexing and documentation procedures should be developed for the Order for Services (OFS) files.

- OFS's should be reviewed prior to approval, to determine if the work is for the rehabilitation/enhancement of the Authority's infrastructure and the work should be properly performed under these contracts.

- All revisions to the Task Orders should contain an explanation for the revision adequate for outside review.

ADMT and IRPG representatives have agreed with our recommendations and initiated actions to implement these improvements.

**THIS DOCUMENT IS FOR INTERNAL USE ONLY**
**Page 26 of 26**

# ATTACHMENT 3



**(Board Copy)**
**Washington Metropolitan Area Transit Authority**
# METRO ELECTRONIC ACTION DOCUMENT

| IDENTIFICATION | | | |
|---|---|---|---|
| MEAD ID: | 99264 | ACTION: | Modify |
| AWARD VALUE: | $1,762,969.00 | CONTRACT: | C05034 |
| FUND SOURCES: (View) | Infrastructure Renewal Program Operating Funds | CONTRACTOR: | ERG Transit Systems ( USA) Inc. 1800 Sutter Street Suite 900 Concord, CA 94520 |
| LAST MODIFIED: | 03/01/2006 | | |

| DESCRIPTION | |
|---|---|
| SUBJECT: | Modify RCSC Contract No. C05034, for settlement of identified claims and changes |
| PURPOSE: | To request approval of the Board of Directors for contract modifications to Contract C05034, Regional Customer Service Center, for settlement of identified claims and changes. |

| ORIGINATION | | | | |
|---|---|---|---|---|
| INITIATOR | | DEPARTMENTAL APPROVAL | | |
| CHRISTIAN BERES on 01/18/2006 | | Approved by  WILKINS , PAMELA    01/26/2006 | | |
| PHONE: | 202-962-2707 | OFFICE: | FARE | DEPT: | Communications |

| COORDINATION (ROUTING) | | |
|---|---|---|
| OFFICE | NAME | ACTION/DATE |
| (7110) | WILKINS, PAMELA | Approved 01/26/2006 |
| AGMC (6110) | AGOURIDIS, LEONA | Re-assigned 01/25/2006 |
| PRMT (7410) | JACKSON, LUCY | Approved 02/03/2006 |
| COUN (1410) | O'KEEFFE, CAROL | Approved 03/03/2006 |
| AUDT (7210) | STEWART, JAMES | Approved w/ Comments 03/01/2006 |
| (1120) | Moneme, Emeka | Approved 03/10/2006 |

| FINAL APPROVALS | |
|---|---|
| OFFICE | NAME/ACTION |
| GM | Approved for GMGR by GMGR CEO on 03/10/2006 |
| BEMR | Approved for  by Emeka Moneme on 03/10/2006 |
| BOARD | BOARD WMATA  (Not Yet Approved) |



**Washington Metropolitan Area Transit Authority**
# METRO ELECTRONIC ACTION DOCUMENT

## NARRATIVE

### Background & Discussion:

Contract C05034, SmarTrip® Regional Customer Service Center (RCSC), was awarded to ERG Transit Systems USA on July 21, 2003. The RCSC provides a series of services to WMATA, and participating agencies in the Regional SmarTrip® System. These services include: customer service, card management, card fulfillment, financial clearing & settlement, and operation and maintenance of the point-of-sale system.

Contract C05034 was anticipated to be implemented in two phases: a startup phase of one year, followed by an operations phase of four years. The purpose of the startup phase was to put in place three major elements: customer service, financial clearing & settlement, and the point-of-sale network. At the finalization of the startup phase; the development of financial clearing & settlement, and point-of-sale network elements had not been completed. The customer service element, while operational, did not incorporate the contractor's Multi-Application Smartcard Solution (MASS) software – thus, certain automated elements of customer service and card management were not functional.

The commencement of Customer Service operations in June 2004 coincided with the implementation of cashless parking at WMATA. Sales of SmarTrip® cards increased from an average of 8,000 per month to 58,000 per month. Moreover, calls to the customer RCSC, that ranged around 6,000 per month before cashless parking, increased in excess of 12,000 calls per month. This resulted in an increase in customer service labor costs, which the contractor could not recoup through the contract unit price schedule due to the fact that all contract elements, as discussed previously, were not implemented. There have been three contract modifications issued for the necessary additional labor in the amounts of $50,000, $145,000, and $200,000; issued September 14, December 8, 2004, and June 16, 2005, respectively. These modifications provided necessary funding for the additional RCSC labor through June 30, 2005. The previously approved funding only supported additional costs up to May 31, 2005. Approval is requested to reimburse the contractor for additional labor from June 1, 2005 through the anticipated end of the additional customer service labor requirement, June 30, 2006, for a maximum not-to-exceed amount of $60,613 per month, or $787,969 for the designated period.

Further, this MEAD requests approval for funding associated with the settlement of a number of change orders and claims associated with Contract C05034. The principal claims are CP#7, Delays Due to Changes in Clearing and Settlement during the period 7/21/2003 - 3/15/2004; and CP#18, Connectivity to Carmen Turner Facility for Disaster Recovery. Additional claims and changes include CP#6, Paper Products; CP#8, Data Synchronization; CP#10, Delay of POS Devices; CP#15, SIRS development Feb. 2004 to Aug. 2005; CP#17, Pre-Bill Autoload; CP#19, Additional Website Functionality; and CP#20, Multiple Language Capability. Agreement was reached with the contractor in the amount of $975,000 subject to WMATA Board of Director approval. The funding breakdown is as follows: Capital Payments - $588,648, and Operating Payments - $386,352 (subject to availability of funding, and WMATA Board of Director approval of the Operating Budgets for FY06 - $88,752; FY07 - $142,848; FY08 - $142,848; FY09 - $11,904). This settlement is subject to audit of costs and pricing data in accordance with the audit and record provisions of contract C05034, supporting CP#6, Paper Products and CP#18, Connectivity to Carmen Turner Facility for Disaster Recovery, which have not been previously audited.
Approval to award Contract C05034 to ERG Transit for the SmarTrip® Regional Customer Service Center was granted by the Board of Directors on January 16, 2003, subject to receipt of certain financial documents. The contract was subsequently awarded to ERG on July 21, 2003.

The revised contract amount resulting from these change orders is $22,353,227.30 which includes $8,682,630.30 Capital and $13,670,597 Four-Year Operating.

**Alternatives:**

The alternative to payment for additional labor charges at the RCSC, driven by unanticipated card sales since the launch of cashless parking and not reimbursed through contract payments, is to not reimburse the contractor. Without reimbursement, the contractor would likely reduce staff, resulting in a steep decline in service and corresponding increase in customer dissatisfaction.

The alternative to settlement of the subject claims and changes is to issue unilateral modifications to the contract and address resultant litigation. This would result in substantial staff legal costs as well as a possible higher settlement cost.

**Impact on Funding (Capital):**

Budget:  Infrastructure Renewal Program
Fiscal 2005 & Prior and FY06
Project:  Title Regional Fare Integration
FY06 Budget Book Page 200

**Budget Information**

|  | FY05 & Prior | FY06 | Total |
|---|---|---|---|
| Budget Amount | $26,900,000 | $12,500,000 | $39,400,000 |
| This Action (ERG Delay Claim and Change Orders) | $588,648 | $0 | $588,648 |
| Prior Obligations (see remark below) | $20,729,052 | $12,142,942 | $32,871,994 |
| Subtotal | $21,317,700 | $12,142,942 | $33,460,642 |
| Remaining Budget | $5,582,300 | $357,058 | $5,939,358 |

Remarks:
On January 16, 2003, the Board of Directors provided capital program approval of the Regional Customer Service Center Program in the amount of $31,157,843, which is funded partly by MTA in the amount of $6,599,427, and WMATA in the amount of $24,558,416 (Meads No. 37358, 44172, and 47625). The Prior Obligations amount includes ERG's contract award in the amount of $7,857,195. Not all program funds have been obligated to date because they include approved options to other contracts which have not been exercised, 10% contract contingency, and other incidental costs for Project Management and Consulting support. Prior obligations further include NF4 Single Platform change order to contract C44444 with Cubic Corp.

**Impact on Funding (Operating):**

Budget: Operating Budget, Fiscal 2006, 2007, 2008, 2009
Department: Department of Customer Contract Services
Office: SmarTrip® Operations
Total Multi-Year Operating Amount:     $1,174,321

ERG was awarded the amount of $12,101,276 for four year operations subject to funding availability and yearly Board approval

FY06 Operating Budget

Budget Book: Page 70
Account: SmarTrip® Operations
Services Other Budget:          $3,670,000
Prior Expenses:                $1,126,998
This Action (FY06):              $876,721
Remaining FY06 Funds:          $1,666,281
Remarks: There are sufficient funds available in the FY06 budget to support this action.


FY07 Operating Budget (Proposed)

Proposed Budget Book: Page 61
Account: SmarTrip® Operations
Services Other Budget:          $4,337,600
Prior Expenses:                        $0
This Action (FY07):              $142,848
Remaining FY07 Funds:          $4,194,752

Remarks: FY07 Funding is subject to Board approval of the budget and the availability of funding


FY08 Operating Budget (Pending)

Proposed Budget Book: N/A
Account: SmarTrip® Operations
This Action (FY08):              $142,848

Remarks: FY08 Funding is subject to Board approval of the budget and the availability of funding


FY09 Operating Budget (Pending)

Proposed Budget Book: N/A
Account: SmarTrip® Operations
This Action (FY09):               $11,904

Remarks: FY09 Funding is subject to Board approval of the budget and the availability of funding


**Schedule:**

There is no change to the final contract completion date of July 21, 2008 as a result of this action.


**Prior Approvals:**

On January 16, 2003, the Board of Directors authorized award of a contract for the procurement, installation and operation of a Regional Customer Service Center, to ERG Transit Systems (USA), Inc., of Concord, CA., which included operating costs for four years, subject to annual Board approval

On April 22, 2005, the Board of Directors approved a modification to Contract C05034 to allow reimbursement of $200,000 in additional operating costs to the Regional Customer Service Center (RCSC) incurred and forecast to continue due to unanticipated SmarTrip® card sales volumes. (As discussed in the text above, the combined additional labor change orders exceeded the Board threshold.)

**Affirmative Action:**

Equal Employment Opportunity:

Contractor will comply with Executive Order 11246, Revision 4.

Disadvantaged Business Enterprise

Appendix "B" requirements for C05034 applies to the additional work associated with these changes.

**Recommendation:**

Recommend the Board of Directors approve contract modifications for the identified claims and changes to Contract C05034, Regional Customer Service Center.

# ATTACHMENT 4

**Washington Metropolitan Area Transportation Authority
Board Action/Information Summary**

| ☒ Action<br>☐ Information | MEAD Number:<br>99698 | Resolution:<br>☐ Yes ☒ No |
| --- | --- | --- |

## PURPOSE

To request approval of the Board of Directors for contract modifications to Contract C05034, Regional Customer Service Center (RCSC), for 1) settlement of identified delay claims and 2) additional RCSC labor.

## DESCRIPTION

Contract C05034 for the SmarTrip® Regional Customer Service Center was awarded to ERG Transit Systems (USA) Inc. on July 21, 2003. The SmarTrip® Regional Customer Service Center currently provides a number of services to WMATA, which will be extended to participating agencies in the Regional SmarTrip® System when those agencies are connected to the regional system. These current and upcoming services include: customer service, card management, card fulfillment, financial clearing and settlement, and operation and maintenance of the point-of-sale system.

The contract is to be accomplished in two phases: a startup phase of one year, followed by an operations phase of four years. The startup phase puts in place three major elements: customer service, financial clearing and settlement, and point-of-sale network. At the scheduled conclusion of the one-year startup phase, development of the financial clearing and settlement and point-of-sale network elements had been delayed by Authority-issued changes and actions. Startup development work has continued to date, with portions being delayed.

Settlement of Delay Claims (Mod 12, Piece 1 Delay Claim, Incremental Costs, Etc.)
This Agenda Item addresses settlement of specific areas of claim contained in the Contractor's "Request for Equitable Adjustment" (REA) received April 17, 2006. The settlement portion includes four areas:
1) Delays to Clearing and Settlement, Regional Partner Testing (known as Piece 1 Test Delay Claim)
2) Additional Work to Clearing and Settlement, Regional Partner Testing (known as Piece 1 Incremental Cost)
3) Impact for Local Remobilization
4) REA Claim Preparation Costs

The stated amount of these portions of the REA was $2,010,725. After extensive analysis and negotiation, staff reached a negotiated settlement of $820,000. Remaining areas of the "Request for Equitable Adjustment" have not been settled, and are not included in this Contract Modification.

Additional RCSC Labor (Mod 13, Additional Labor III - SmarTrip® RCSC)
The commencement of the customer service, card management and card fulfillment portion of the RCSC operations in June 2004 coincided with the implementation of cashless parking at WMATA. The implementation of cashless parking at the WMATA facilities caused a substantial increase in the number and usage of cards; sales of SmarTrip® cards increased from an average of 8,000 per month to 58,000 per month. Calls to the RCSC, approximately 6,000 per month prior to the commencement of cashless parking, increased significantly to 16,000 calls per month today.

In addition, since the other portions of the startup phase (clearing and settlement and point-of-sale network) had been delayed, the contractor could not utilize its proprietary Multi-Application Smartcard Solution (MASS), which included customer service databases and integrated applications. Without this software system, customer service was performed using available data, but in a labor-intensive inefficient manner. Additional, but unanticipated, labor allowed the RCSC to perform to contract-required levels; however, the contractor could not recover these costs through the unit price items as contained in the contract. Therefore, a series of contract modifications to allow the contractor to recover these costs have been issued. The subject contract modification would cover costs through February 2007, at which time the Multi-Application Smartcard Solution software will be functional and the need for extra compensation for additional labor will be reassessed.

The contractor has submitted claims for additional costs due to delays in the contract. Staff is evaluating these and will return to the Board in the spring with a recommendation.

**FUNDING IMPACT**

Funding for both contract modifications is within the existing Regional Fare Integration budget.

**RECOMMENDATION**

Recommend the Board of Directors approve the contract modifications titled "Piece 1 Delay Claim, Incremental Costs, Etc." and "Additional Labor III - RCSC" to Contract C05034, Regional Customer Service Center, in the amounts of $820,000 and $496,000 respectively.

# ATTACHMENT 5



**CUBIC**

May 2, 2007

PARP Administrator
Office of General Counsel
Washington Metropolitan Area Transit Authority
600 Fifth Street, NW
Washington, D.C. 20001

Subject:    Request for Records pertaining to Contract CO5034 Regional Customer Service
            Center (RCSC) and ERG Transit Systems (USA) Inc.

Reference:  1)  MEAD ID Nos. 99264 and 99698
            2)  CP#6, Paper Products;
            3)  CP#7, Delays Due to Changes in Clearing and Settlement during the period
                7/21/2003 - 3/15/2004;
            4)  CP#8, Data Synchronization;
            5)  CP#10, Delay of POS Devices;
            6)  CP#15, SIRS development Feb. 2004 to Aug. 2005;
            7)  CP#17, Pre-Bill Autoload;
            8)  CP#18, Connectivity to Carmen Turner Facility for Disaster Recovery;
            9)  CP#19, Additional Website Functionality;
            10) CP#20, Multiple Language Capability; and.
            11) Contract Modifications titled "Piece 1 Delay Claim, Incremental Costs, Etc."
                and "Additional Labor III - RCSC" to Contract C05034, Regional Customer
                Service Center, in the amounts of $820,000 and $496,000 respectively.
            12) Any and all other claims submitted by ERG and any contract adjustments
                /contract modifications made by WMATA

Dear PARP Administrator:

This request is being made in accordance with WMATA's Public Access to Records Policy
(PARP).

We hereby request the following for Reference 1-12 above:

    A.  Copy of any ERG Requests for Equitable Adjustments and all Contract Modifications
    B.  Copy of WMATA/ERG Negotiated Settlement Agreements
    C.  All ERG claim documents
    D.  Dispositions on all claims

Should you have any questions, I may be reached at (858) 598-1118.

Sincerely,

Rocco A. Rutledge
Director, Contracts

Cubic Transportation Systems, Inc. • 5650 Kearny Mesa Road • San Diego, CA 92111
+1-858-268-3100 • Fax +1-858-292-9987 • www.cubic.com

1:07-cv-01924RMC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ERG TRANSIT SYSTEMS (USA), INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case: 1:07-cv-01924 |
| | ) | Assigned To: Collyer, Rosemary M. |
| WASHINGTON METROPOLITAN | ) | Assign. Date: 10/25/2007 |
| AREA TRANSIT AUTHORITY, | ) | Description: FOIA/Privacy Act |
| | ) | |
| Defendant. | ) | |

### ORDER GRANTING CUBIC TRANSPORTATION SYSTEMS, INC.'S MOTION TO INTERVENE

This Court, upon consideration of the Motion by Cubic Transportation Systems, Inc. to intervene as a defendant in the above-captioned proceeding and the memorandum of law in support thereof, and for good cause shown,

HEREBY ORDERS that Cubic's Motion is GRANTED.

SO ORDERED.

_____
THE HONORABLE ROSEMARY M. COLLYER

_____, 2007

1:07-cv-01924RMC
12738740.2

CO-386
Rev. 10/03

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ERG TRANSIT SYSTEMS (USA), INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case: 1:07-cv-01924 |
| | ) | Assigned To: Collyer, Rosemary M. |
| WASHINGTON METROPOLITAN | ) | Assign. Date: 10/25/2007 |
| AREA TRANSIT AUTHORITY, | ) | Description: FOIA/Privacy Act |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE UNDER LCvR 7.1**

I, the undersigned, counsel of record for, Cubic Corporation, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of Cubic Corporation, which have any outstanding securities in the hands of the public. _____ Advanced Combat Training Systems Limited; Consolidated Converting Co.; CTS-Nordic Aktiebolag; Cubic (UK) Limited; Cubic Advanced Tactical Systems. LLC; Cubic Applications, Inc.; Cubic Communications, Inc.; Cubic Corporation; Cubic Data Systems, Inc.; Cubic de Mexico, S.A. de C.V.; Cubic Defence Australia Pty Limited; Cubic Defence New Zealand Limited; Cubic Defence Systems Limited; Cubic Defense Applications, Inc.; Cubic Defense Systems GmbH; Cubic Field Services Canada Limited; Cubic Foreign Sales, Inc.; Cubic Holdings Limited; Cubic Land, Inc.; Cubic Simulation Systems, Inc.; Cubic Transportation Systems (Australia) PTY Limited; Cubic Transportation Systems (Deutschland) GmbH; Cubic Transportation Systems Limited; Cubic Transportation Systems Nordic AS; Cubic Worldwide Technical Services, Inc.; ECC Simulation Ltd.; Oscmar Products Limited; Techno International Limited; Traf-Park Inc.; Traf-Park, Inc. _____

These representations are made in order that judges of this court may determine the need for recusal.

Attorney of Record

_____
Signature

___387257_____
Bar Identification Number

Wiley Rein LLP
By: Rodney H. Glover
Print Name

1776 K Street, NW
Address

Washington    D.C.         20006
City         State         Zip

(202) 719-4153
Telephone Number

rglover@wiley rein.com
Email

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ERG TRANSIT SYSTEMS (USA), INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case: 1:07-cv-01924 |
| ) | Assigned To: Collyer, Rosemary M. |
| WASHINGTON METROPOLITAN ) | Assign. Date: 10/25/2007 |
| AREA TRANSIT AUTHORITY, ) | Description: FOIA/Privacy Act |
| ) | |
| Defendant. ) | |
| ) | |
| and ) | |
| ) | |
| CUBIC TRANSPORTATION SYSTEMS, INC., ) | |
| ) | |
| A Delaware Corporation, ) | |
| ) | |
| 5650 Kearny Mesa Road ) | |
| San Diego, CA 92111 ) | |
| ) | |
| Intervenor/Defendant. ) | |

**PROPOSED ANSWER**

Intevenor/Defendant Cubic Transportation Systems, Inc. ("Cubic"), by and through its counsel, hereby answers the Complaint filed in this action by Plaintiff ERG Transit Systems (USA), Inc. as follows:

**INTRODUCTION AND NATURE OF ACTION**

Cubic admits that the Complaint purports to seek declaratory and equitable relief to prevent the Washington Metro Area Transit Authority ("WMATA") from disclosing to Cubic documents sought by Cubic under WMATA's Public Access to Records Policy ("PARP"). Cubic denies the remainder of the allegations in the paragraph headed "Introduction and Nature of Action."

1:07-cv-01924RMC

## PARTIES

1.      Defendant Cubic Transportation Systems, Inc. is a corporation organized and existing under the laws of California, having its principal place of business in San Diego, California.

2.      Cubic's parent company is Cubic Corporation, a corporation organized and existing under the laws of Delaware, having its principal place of business in San Diego, California.

3.      Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies same.

4.      Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies same.

5.      Cubic admits Paragraph 3.

## JURISDICTION AND VENUE

6.      With regard to the allegations in Paragraph 4, Cubic admits that this Court has subject matter jurisdiction over this action.   The remainder of Paragraph 4 states a legal conclusion for which no response is required.

7.      Insofar as Paragraph 5 states a legal conclusion, no response is required.  Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5 and therefore denies same.

8.      Cubic admits Paragraph 6 insofar as WMATA's PARP provides that actions to enforce it may be brought in this Court.  However, the PARP should be read as a whole and speaks for itself.  The remaining allegations of Paragraph 6 are denied.

9.    Cubic admits Paragraph 7 insofar as WMATA's PARP provides that it will be interpreted and applied consistent with federal FOIA law and practice. However, the PARP should be read as a whole and speaks for itself. The remaining allegations of Paragraph 7 are denied.

10.    Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and therefore denies same.

11.    Insofar as Paragraph 5 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5 and therefore denies same.

12.    Cubic admits Paragraph 10.

## FACTUAL BACKGROUND

13.    Cubic admits Paragraph 11.

14.    Cubic admits Paragraph 12.

15.    With regard to the allegations in Paragraph 13, Cubic admits that a "smart card," as employed by WMATA, is a layered plastic card in which is embedded a microprocessor, and a radio frequency receiver. Cubic also admits that upon being contacted by a radio transmission device, the card can communicate with the transmission source, and perform data storage and mathematical manipulation, including retrieval and modification of the data stored on the memory of the card. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 and therefore denies same.

16.     With regard to the allegations in Paragraph 14, Cubic admits that WMATA issued a Request for Proposal ("RFP") for procurement of a state of the art automatic fare collection system in 2001.  The remaining allegations of Paragraph 14 are denied.

17.     Cubic admits Paragraph 15.

18.     With regard to the allegations in Paragraph 16, Cubic admits WMATA issued amendments to the RFP.  Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 and therefore denies same.

19.     With regard to the allegations in Paragraph 17, Cubic admits that it submitted bids in response to the RFP.  Cubic also admits that both Cubic and ERG received contracts under the RFP.  Cubic denies the remaining allegations in Paragraph 17.

20.     Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and therefore denies same.

21.     Cubic admits Paragraph 19.

22.     Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations regarding ERG's "repeated warnings to WMATA" in Paragraph 20 and therefore denies same.  Cubic denies the remaining allegations in Paragraph 20.

23.     Upon information and belief Cubic believes ERG filed a request for equitable adjustment ("REA"). Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 and therefore denies same.

24.     Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and therefore denies same.

25.    Upon information and belief Cubic believes that some of ERG's REA claims were settled by a December 21, 2006 contract modification. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23 and therefore denies same.

26.    Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and therefore denies same.

27.    Insofar as Paragraph 25 states a legal conclusion, no response is required. To the extent the allegations of this paragraph of the Complaint site or refer to portions of the PARP it speaks for itself and must be read as a whole. Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and therefore denies same.

28.    Insofar as Paragraph 26 states a legal conclusion, no response is required. To the extent the allegations of this paragraph of the Complaint site or refer to portions of the PARP it speaks for itself and must be read as a whole. Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and therefore denies same.

29.    Insofar as Paragraph 27 states a legal conclusion, no response is required. To the extent the allegations of this paragraph of the Complaint site or refer to portions of the PARP it speaks for itself and must be read as a whole. Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and therefore denies same.

30.     Insofar as Paragraph 28 states a legal conclusion, no response is required. To the extent the allegations of this paragraph of the Complaint site or refer to portions of the PARP it speaks for itself and must be read as a whole. Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and therefore denies same.

31.     Insofar as Paragraph 29 states a legal conclusion, no response is required. To the extent the allegations of this paragraph of the Complaint site or refer to portions of the PARP it speaks for itself and must be read as a whole. Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and therefore denies same.

32.     Insofar as Paragraph 30 states a legal conclusion, no response is required. To the extent the allegations of this paragraph of the Complaint site or refer to portions of the PARP it speaks for itself and must be read as a whole. Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and therefore denies same.

33.     Insofar as Paragraph 31 states a legal conclusion, no response is required. To the extent the allegations of this paragraph of the Complaint site or refer to portions of the PARP it speaks for itself and must be read as a whole. Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and therefore denies same.

34.     Insofar as Paragraph 32 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32 and therefore denies same.

35.    Cubic admits Paragraph 33.

36.    With regard to the allegations of Paragraph 34, Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

37.    With regard to the allegations of Paragraph 35, Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

38.    With regard to the allegations of Paragraph 36, Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

39.    With regard to the allegations of Paragraph 37, Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

40.    Insofar as Paragraph 38 states a legal conclusion, no response is required.  Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 38 and therefore denies same.

41.    Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 and therefore denies same.

42.    Insofar as Paragraph 40 states a legal conclusion, no response is required.  Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40 and therefore denies same.

43.    Insofar as Paragraph 41 states a legal conclusion, no response is required.  Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41 and therefore denies same.

44.    Insofar as Paragraph 42 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42 and therefore denies same.

45.    Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and therefore denies same.

46.    Insofar as Paragraph 44 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44 and therefore denies same

47.    Insofar as Paragraph 45 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 45 and therefore denies same

48.    Insofar as Paragraph 46 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46 and therefore denies same.

49.    Insofar as Paragraph 47 states a legal conclusion, no response is required. Cubic denies the remaining allegations in Paragraph 47 and affirmatively asserts that it has not "interfered" with ERG's performance to ERG's "competitive disadvantage".

50.    Cubic is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and therefore denies same.

51.    Insofar as Paragraph 49 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 and therefore denies same.

52.    Insofar as Paragraph 50 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50 and therefore denies same.

53.    Insofar as Paragraph 51 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 51 and therefore denies same.

54.    Insofar as Paragraph 52 states a legal conclusion, no response is required. Cubic is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 52 and therefore denies same.

55.    Any allegation not admitted or denied above is denied.

## REQUESTED RELIEF

All of Plaintiff's prayers for relief should be denied.

## AFFIRMATIVE DEFENSE ONE

The Complaint fails to state a claim upon which relief may be granted.

Cubic reserves the right to rely upon any additional defenses, including affirmative defenses, to this action that become known to it during the course of discovery or at trial.

WHEREFORE, CUBIC denies that ERG is entitled to the requested relief and respectfully requests:

A.    That the Court find that the documents requested by Cubic and deemed disclosable under the PARP by WMATA should be released to Cubic forthwith and,

B.    Find that WMATA's October 11, 2007, decision to release the requested

documents was not arbitrary, capricious, an abuse of discretion, contrary to law or in excess of

WMATA's authority.


Dated:  December 3, 2007                WILEY REIN LLP

                                        Rodney H. Glover
                                        Bar No. 387257
                                        1776 K Street, N.W.
                                        Washington, DC  20006
                                        Telephone:  (202) 719-7381
                                        Facsimile:  (202) 974-1426
                                        Email: rglover@wileyrein.com

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December, 2007 a copy of the foregoing document was served electronically and by first class mail upon the following:

Benjamin J. Lambiotte, Esq.
Matthew C. Hoyer, Esq.
Robert A.W. Boraks, Esq.
GARVEY SCHUBERT BARER
1000 Potomac Street, NW
Fifth Floor
Washington, DC  20007
Telephone: (202) 965-7880
Fax:  (202) 965-1729
Email:  blambiotte@gsblaw.com

Phillip T. Staub, Esq.
Washington Metropolitan Transit Authority
600 5th Street, N.W.
Washington, DC  20007
Telephone: (202) 962-2555
Email: pstaub@wmata.com

Rodney H. Glover