IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERG TRANSIT SYSTEMS (USA), INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WASHINGTON METROPOLITAN ) <br> AREA TRANSIT AUTHORITY, ) <br> ) <br> Defendant. ) <br> ) | Case: 1:07-cv-01924 <br> Assigned To: Collyer, Rosemary M. <br> Assign. Date: 10/25/2007 <br> Description: FOIA/Privacy Act |

**REPLY MEMORANDUM IN SUPPORT OF
CUBIC TRANSPORTATION SYSTEMS, INC.'S MOTION TO INTERVENE**

Cubic Transportation Systems, Inc. ("Cubic") submits this reply memorandum in support of its Motion to Intervene in the above-captioned action, dated December 3, 2007 and, in response to ERG Transit Systems (USA), Inc. ("ERG")'s Memorandum of Points and Authorities in Opposition to Motion to Intervene of Cubic Transportation Systems, Inc. ("ERG Mem."), dated December 17, 2007.

A.  **Introduction**

Despite ERG's arguments to the contrary, Cubic satisfies all grounds for intervention of right under Rule 24(a) of the Federal Rules of Civil Procedure. ERG admits that Cubic satisfies all but one of the grounds for intervention. ERG Mem. at 3. ERG's sole ground for opposing Cubic's Motion to Intervene is that WMATA adequately represents Cubic's interests. *See id*.

Although ERG asserts to the contrary, Cubic need only show that the Washington Metro Area Transit Authority ("WMATA")'s representation of Cubic's interests "may be" inadequate in order to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)—a minimal

burden that is clearly met by WMATA's lack of a financial stake in the outcome of this litigation and Cubic's added interest in discovering whether ERG has committed any actionable business torts through its communications with WMATA. Lastly, whether the Court grants Cubic's motion under either Rule 24(a) or Rule 24(b), Cubic agrees that a reasonable protective order and a reasonable order limiting the scope of this litigation are appropriate—however, neither an overly broad protective order nor an overly broad order limiting the scope of this litigation, as suggested by ERG, are appropriate or necessary.

### B. Cubic Must Only Show That Its Interest "May Be" Inadequately Represented by WMATA as the Concept of *Parens Patriae* and Its Presumption of Adequate Representation Does Not Apply Here

Supreme Court and this Circuit's precedent is clear that, even when the government is a party on the side of the litigation to which the intervenor will be joining, an applicant for intervention must only show that the representation of its interest "may be" inadequate to meet its burden of showing of inadequate representation. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) (applying "may be" standard in a case where intervenor sought to intervene on the side of the Secretary of Labor); *Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) (applying "may be" standard in a case where intervenor sought to intervene on the side of the District of Columbia).

In *Dimond*, an automobile accident victim brought an action challenging provisions of the District of Columbia's no-fault law, which among other things, restricted "an automobile accident victim's right to bring a tort suit to recover noneconomic losses such as pain and suffering unless the victim incurs $5,000 or more in medical expenses," as unconstitutional. 792 F.2d at 181. Three insurance companies (the "Insurers") sought to intervene to defend the legality of the statute and the District Court denied their motion. *Id*. at 182. On appeal, this Circuit reversed and concluded that the Insurers had "made a legally sufficient showing that the

District of Columbia might not adequately represent [the Insurers]." *Id*. The Circuit framed its analysis of whether the District of Columbia adequately represented the Insurer's interest by stating that the applicant intervenor need only show that representation of its interests may be inadequate:

> We must next determine whether [the Insurer's] interest is adequately represented by the existing parties to the litigation. The original burden of showing inadequate representation rests on the applicant for intervention. . . . This burden, however, is not onerous. **The applicant need only show that representation of his interest "may be" inadequate**, not that representation will in fact be inadequate. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, n.10, 30 L.Ed.2d 686 (1972); *Environmental Defense Fund v. Higginson*, 631 F.2d at 740; *Natural Resources Defense Council v. Costle*, 561 F.2d at 911.

*Id*. at 192 (internal citation omitted)(emphasis added). Thus, as *Dimond* demonstrates, D.C. Circuit precedent has long held that an intervenor need only show that representation of its interest "may be" inadequate, even in cases in which the intervenor is moving to join a litigation on the same side as a government entity.

As ERG notes there is an exception to the general rule that an intervenor need only show that its interest "may be" inadequately represented by existing parties. *See* ERG Mem. at 4-5. As was stated by this Circuit in *Environmental Defense Fund v. Higginson*:

> Under the *parens patriae* concept, however, a state that is a party to a suit involving a matter of sovereign interest is presumed to represent the interests of all its citizens. Thus, to intervene in a suit in district court in which a state is already a party, a citizen or subdivision of that state must overcome this presumption of adequate representation.

631 F.2d 738, 740 (D.C. Cir. 1979). ERG relies on this citation and a citation from Moore's Federal Practice to conclude that "Cubic, in urging that this element be measured by a minimal 'may be' inadequate test, misapprehends the liberality of the standard applicable here, and has

not made a sufficient showing of the circumstances necessary to overcome the presumption of adequate representation applicable in this case." ERG Mem. at 4.

ERG's reading of *Higginson* is flawed. As the language from *Higginson* ERG quoted in its memorandum states, the presumption of adequate representation, created by the concept of *parens patriae*, applies when considering a motion to intervene when "a state is already a party" and "a citizen or subdivision of that state" is the party attempting to intervene. *Higginson* provides a good example of when this exception to the general "may be" inadequate standard applies. In *Higginson*, "the District Court granted intervention to [four states, including Colorado and Nevada,] and to a private electrical utility company. It denied intervention to four local water districts in Colorado and one in Nevada. . . ." 631 F.2d at 739. Thus, in *Higginson*, while the D.C. Circuit recognized that "[a]n individual seeking intervention ordinarily is required to make only a minimal showing that representation of his interest may be inadequate," it applied the presumption of adequacy to affirm the denial of intervention of the water districts because they were citizens of a state already party to the litigation. This exception to the "may be" standard requiring a presumption of adequate representation applies only to situations in which the intervenor is a citizen of the state already involved in the suit because the presumption evolved from the concept of *parens patriae*, which stands for the proposition that a State represents all of its own citizens when it is party to a lawsuit involving a sovereign matter. *See New Jersey v. New York*, 345 U.S. 369, 372 (1953)("The '*parens patriae*' doctrine, however, has aspects which go beyond mere restatement of the Eleventh Amendment; it is a recognition of the principle that the state, when a party to a suit involving a matter of sovereign interest, 'must be deemed to represent all its citizens.'")(citation omitted).

4

In this case, Cubic, the proposed intervenor, is a corporation of California with its principal place of business in California, and is thus a citizen of the state of California. *See* Cubic's Proposed Answer ¶ 1. WMATA, is an instrumentality of the states of Maryland, Virginia and the District of Columbia. *See* Compl. ¶ 3. As Cubic is not "a citizen or subdivision" of Maryland, Virginia or the District of Columbia (the states which are "already a party" based upon WMATA's presence in the suit), the presumption of adequate representation based upon the concept of *parens patriae* does not apply and the general standard of "may be" inadequate controls.

Lastly, *Schoenborn v. Washington Metropolitan Area Transit Authority*, WL 4150440 (D.D.C. Nov. 26, 2007), upon which ERG also relies, is inapplicable here. *Schoenborn* involved a Survival Act and wrongful death claim brought by a husband based on his wife's death following an accident involving a WMATA bus. The daughter of the woman tried to intervene in the Survival Act claim and was denied. The daughter also tried to intervene in the wrongful death claim, under which the step-father had a fiduciary duty to seek as great an award of relief as possible for both he and the daughter (as the law applied for distribution of damages to the spouse and next of kin). *Id.* at *2-3. Before deciding that the daughter could intervene in this claim, the court noted that where "as here, a party is charged by law to protect the interest of a nonparty, that 'representation will be presumed adequate unless special circumstances are shown.'" *Id.* at *3 (citation omitted). Here, WMATA has no statutorily created fiduciary duty to Cubic, such as the step-father did in *Schoenborn*. Again, as *Dimond* and *Higginson* demonstrate, the "may be" inadequate standard for intervention applies even when a government entity is on the same side of the suit to which the intervenor seeks to join, unless the government entity is a state and the proposed intervenor is a citizen of that same state—then and only then is that state,

because of its special relationship to the intervenor (*parens patriae*), presumed to adequately represent the intervenor's interest.

As such, Cubic need only meet the minimal burden of showing that WMATA's representation of Cubic's interests "may be" inadequate.

### C. Cubic's Interests "May Be" Inadequately Represented by WMATA

As was noted above and in Cubic's Memorandum in Support of its Motion to Intervene ("Cubic Mem."), the burden to show inadequate representation is not onerous. *See* Cubic Mem. at 7-8. *Dimond* is illustrative of why Cubic has met this minimal burden. In *Dimond*, the Insurers sought to intervene in an action challenging a District of Columbia no-fault insurance law which the District was already defending. The Court wasted no time in finding that the Insurers had met their minimal burden:

> We find that [the Insurers] made a legally sufficient showing that representation of its interests may be inadequate. As [the Insurers] point[] out in [their] petition to intervene, the District of Columbia has no financial stake in the outcome of the Challenge to the 1982 No-Fault Insurance Act.

792 F.2d at 192. The Court went on to recognize how often the government fails to adequately represent a private party's interest:

> [The Insurers'] application for intervention thus falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of the interests of private parties in certain circumstances.

*Id.*; *see also*, Cubic Mem. at 7-8 (further citing *Dimond*).

Here, like in *Dimond*, WMATA has no financial interest in the outcome of this litigation which involves only whether they must turn over documents requested under PARP. Cubic, on the other hand, has a financial interest in obtaining these documents for purposes of maximizing the funds it receives in a pending Request for Equitable Adjustment ("REA") and possible future

REAs.  Furthermore, Cubic has a legal interest in discovering whether it has any business tort claims against ERG for comments it has made in correspondence with WMATA.  If for example, ERG claimed delay damages resulting from Cubic's action or inaction, Cubic has a right to discover this.  WMATA's sole interest in this litigation is complying with its PARP—it has no financial or outside legal interest.  Here, as was the case in *Dimond*, WMATA "would be shirking its duty were it to advance" Cubic's "narrower interest[s] at the expense of its representation of the general public interest," 792 F.2d at 193, and as such, cannot adequately represent Cubic's interests.

ERG asserts that because WMATA and Cubic "seek the same objective," Cubic's interests will be adequately represented by WMATA.  However, even assuming arguendo that Cubic and WMATA have the same objective, it is of no matter in this Circuit as *Dimond* makes clear.  In *Dimond*, the objective of both the District of Columbia and the Insurers was to ensure that the no-fault law was not struck down and intervention was nevertheless allowed.  *See* 792 F.2d at 192-93.  Likewise, in *John Doe #1 v. Glickman*, 256 F.3d 371 (5th Cir. 2001), the only reverse-FOIA action cited by either party, the original requestor sought to intervene as a defendant.  It did not matter to the Fifth Circuit, in finding that the intervention should have been allowed, that the intervenor and the government had what ERG would classify as the "same objective" because regardless of the objectives sought by the parties, "[t]he USDA is a governmental agency that must represent the broad public interest, not just the [Intervenor's] concerns" and as such, the intervenor had met its minimal burden of proving inadequate representation.  *Id*. at 381.  As both *Dimond* and *Glickman* make clear, it does not matter if Cubic's objective is the same as WMATA's when determining whether Cubic may intervene.

ERG also asserts that:

7

> Under applicable FOIA law as declared by the D.C. Circuit, Cubic has no greater or different interest in the information it seeks than any other member of the public coming before WMATA with a PARP request seeking information that a submitter seeks to exempt from disclosure.

ERG Mem. at 6. To support this assertion, ERG cites *Public Citizen Health Research Group v. FDA*, 185 F.3d 898 (D.C. Cir. 1999). Specifically, in support of its assertion, ERG provides the following quotation in a parenthetical: "the public interest side of the balance is not a function of the identity of the requestor…." *See* ERG Mem. at 6 (citing *Public Citizen*, 185 F.3d at 904). Here, ERG must have misapprehended the nature of the case from which it has quoted. *Public Citizen* involved a FOIA requestor bringing a claim based on the FDA's failure to disclose information it had requested. The FDA had denied the claim based on its finding that the requested information fell within one of FOIA's exemptions. *See Public Citizen*, 185 F.3d at 904-05. The requestor attempted to bolster its claim that the documents it sought should be disclosed under the FOIA because disclosure in its case could have additional public benefits not considered by Congress in its crafting of the FOIA. *Id.* at 904. In rejecting this argument the Court reiterated that the nature of a document, not the document requestor, determines whether a document is disclosable:

> "whether disclosure of a . . . document . . . is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny . . . rather than on the particular purpose for which the document is being requested." In other words, the public interest side of the balance is not a function of the identity of the requester.

*Id* (citations omitted). As such, the D.C. Circuit has held that whether a document is disclosable is not affected by the interests of the party. *Public Citizen* held only that when considering if a document should be disclosed, "Congress has already determined the relevant public interest: if through disclosure 'the public would learn something directly about the workings of the

*Government*,' then the information should be disclosed unless it comes within a specific exemption." *Id*. at 904. The Court was merely stating that the factors to consider in determining whether a document was disclosable were not affected by the identity or motives of the requestor. The Court in *Public Citizen* held nothing in regards to what interests may be considered for purposes of a motion to intervene as ERG's parsed quotation seems to suggest, and counsel is aware of no case law limiting an intervenor's interest in such a way or holding that an intervenor's identity cannot affect what its interests are in a litigation.

If anything, the presumption of adequate representation, which ERG incorrectly argues applies in this case, demonstrates that an intervenor's identity often plays a large role in determining its interest and whether those interests are adequately represented. The presumption applies when an intervenor is identified as a citizen of a state already party to the suit and thus the "identity of the requester" can be determinative in motions to intervene. Here, Cubic's identity as a corporation with a pending REA similar to the one which is the subject of Cubic's PARP request clearly gives it a different interest in joining this litigation than a local businessman might have.

ERG also suggests that because "the answer filed by both WMATA and Cubic's proposed answer are, in substance, identical," *see* ERG Mem. at 7, that WMATA adequately represents Cubic. This argument also fails as the D.C. Circuit has stated that "'[t]he tactical similarity of the present legal contentions of the [parties] does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf.'" *Fund for Animals v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003) (quoting *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967) (alterations in original). As such, because Cubic

has interests which are not adequately represented by WMATA, the similarity between Cubic's Proposed Answer and WMATA's Answer does not prevent Cubic from intervening.

Finally, because Cubic's interests would not be adequately represented by WMATA, the Court could not only grant intervention as a matter of right under Federal Rule of Civil Procedure 24(a), but could also grant permissive intervention under Rule 24(b). Cubic's introduction into this litigation would not unduly delay or prejudice the adjudication of the original parties' rights as Cubic is not seeking to introduce any new issues outside of determining what documents that Cubic requested from WMATA are disclosable under the PARP.

For the foregoing reasons this Court should grant Cubic's Motion to Intervene under either Rule 24(a) or Rule 24(b) of the Federal Rules of Civil Procedure.

> **D. Cubic Agrees With ERG That This Matter Needs to Be Resolved As Quickly As Possible However ERG's Proposed Orders Are Both Overly Broad**

Cubic agrees with ERG that it is in the best interests of all the parties to "avoid undue complication and delay, and keep this case on track for efficient and relatively prompt resolution." ERG Mem. at 9. As previously noted by Cubic, it seeks these documents to assist in negotiations regarding its own REA before the MTA and the preparation of possible future REAs. Time is of the essence as one REA has already been filed. As such, if allowed to intervene in the present action Cubic would welcome and encourage an expedited dispositive motion schedule that leads to a quick and efficient judicial resolution of this action. However, Cubic does not agree that its intervention need be based on all the stipulations ERG urges the Court to impose.

ERG is correct in asserting that appropriate conditions may be imposed upon a party intervening as a matter of right or through permissive intervention. *See* ERG Mem. at 9. Here, ERG urges the Court to: (A) Issue a protective order limiting disclosure of any of the documents

ERG claims are protected by the PARP from disclosure to only Cubic's outside counsel and its clerical assistants, and court personnel and, (B) Issue an order limiting the issues presentable to only the "case as presently pleaded." *See* ERG Mem. at 9-10. Cubic objects to both of these conditions as being overly broad.

First, while Cubic agrees that a protective order is probably appropriate to protect the integrity of this action it does not agree that none of its employees may be included within this protective order. Cubic would seek for the Court to include not only Cubic's outside counsel and its clerical assistants, and court personnel within scope of who may review these documents but also inside counsel of Cubic. The protective order could limit disclosure to two Cubic employees so that they may assist outside counsel and be involved in any tactical decisions necessary to the litigation.[1]

Second, Cubic agrees that an order preventing collateral issues not related to the subject matter at issue, i.e. Cubic's PARP request and whether or not the material requested is protected from disclosure, is in all parties' best interest. However, Cubic does not agree that an order limiting the introduction of all new claims is. Cubic believes an appropriate order would be an order preventing any new claims or issues from being introduced with an exception for any permissive cross-claim Cubic may discover it has against WMATA for failing to fully comply with its PARP request. While, a cross-claim against WMATA would be permissive under Federal Rules of Civil Procedure 13(g), and as such, Cubic is not required to raise it in this action, if Cubic discovers such a claim exists, it may wish to raise this claim now.[2] The fact that

---

[1] As Cubic has not been granted intervention into this matter yet it has not been involved in any of the discussions between WMATA and ERG regarding a scheduling order or protective order. If Cubic's motion to intervene is granted it will quickly begin discussions with both ERG and WMATA regarding proposing scheduling and protective orders to the Court.

[2] Because Cubic is seeking to obtain this information as quickly as possible. Leaving Cubic the option of raising this permissive cross-claim would not prejudice the parties and in fact might promote judicial efficiency as, any claim brought against WMATA by Cubic would involve the same basic legal question of this case, i.e. whether

Cubic may want to add a cross-claim against WMATA also furthers the need to have some employees from its Legal Department covered by any protective order so that they may advise outside counsel on whether they wish to bring a claim at this time or wait until resolution of this initial matter.

In summary, Cubic agrees with ERG that speedy resolution of this case is in all parties' best interests, but believes that, at a minimum, two members of Cubic's in house counsel must be included under any protective order and that while an order limiting the scope of this litigation is desirable it should not limit Cubic's ability to bring a permissive cross-claim against WMATA based on WMATA's response to Cubic's PARP request.

## CONCLUSION

For the foregoing reasons, Cubic respectfully requests that this Court grant its Motion to Intervene and tailor any protective order to allow some employees of Cubic to view the documents in order to assist its outside counsel and tailor any order restricting the scope of the litigation to allow Cubic to be able to bring any permissive cross-claims it may have against WMATA for failing to fully comply with its PARP request.

Dated:  December 20, 2007                    WILEY REIN LLP

                                             /s/ Rodney H. Glover
                                             _____
                                             Rodney H. Glover
                                             Bar No. 387257
                                             1776 K Street, N.W.
                                             Washington, DC  20006
                                             Telephone:  (202) 719-7381
                                             Facsimile:  (202) 974-1426
                                             Email: rglover@wileyrein.com

---

certain documents are protected from disclosure, and the parties would almost certainly be the same as it would be expected that ERG would intervene in any possible future litigation against WMATA brought by Cubic seeking more documents.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2007 a copy of the foregoing document was served electronically upon the following:

>Benjamin J. Lambiotte, Esq.
>Matthew C. Hoyer, Esq.
>Robert A.W. Boraks, Esq.
>GARVEY SCHUBERT BARER
>1000 Potomac Street, NW
>Fifth Floor
>Washington, DC  20007
>Telephone: (202) 965-7880
>Fax: (202) 965-1729
>Email: blambiotte@gsblaw.com
>
>Phillip T. Staub, Esq.
>Washington Metropolitan Transit Authority
>600 5th Street, N.W.
>Washington, DC  20007
>Telephone: (202) 962-2555
>Email: pstaub@wmata.com

_____
Rodney H. Glover