**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ERG TRANSIT SYSTEMS (USA), INC.,** } | |
| } | |
| *Plaintiff,* } | |
| } | |
| v. } | **Case No.  1:07-cv-01924** |
| } | |
| **WASHINGTON METROPOLITAN** } | |
| **AREA TRANSIT AUTHORITY,** } | |
| } | |
| **Defendant.** } | |

**PLAINTIFF ERG TRANSIT SYSTEM, INC.'S**
**MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff ERG Transit Systems Inc., ("ERG") respectfully moves this Court, pursuant to

Fed. R. Civ. Pro. 15(a), to allow amendment of its original Complaint for declaration and

enforcement of its rights under the Washington Metropolitan Area Transit Authority

("WMATA") Public Access to Records Policy ("PARP"), to protect from disclosure, and

permanently enjoin WMATA from releasing confidential and proprietary commercial and

financial information and trade secrets ERG submitted to WMATA in connection with

administration of WMATA contract No. C05304.  **Pursuant to LCvR 7, undersigned counsel**

**represents that, after conferring with counsel for Defendant WMATA and Intervenor**

**Cubic, each stated that it has no objection to the relief requested in the Motion.**

The grounds and authorities for the requested relief are set forth in the Memorandum of

Points and Authorities submitted herewith. ERG attaches to this Motion as Exhibit A its

proposed First Amended Complaint.

**WHEREFORE**, ERG respectfully requests that this Court:

Enter an Order GRANTNG ERG's Motion to for Leave to Amend Complaint, and

accepting for filing the First Amended Complaint attached hereto as Exhibit A.

Respectfully submitted,

**ERG TRANSIT SYSTEMS (USA), INC.**

By its attorneys:     /s/ Benjamin J. Lambiotte
Benjamin J. Lambiotte, Esq.
D.C. Bar No. 421288
blambiotte@gsblaw.com
Matthew C. Hoyer, Esq.
D.C. Bar. No. 975544
Robert A.W. Boraks, Esq.
D.C. Bar No.  72132
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D.C. 20007
(202) 965-7880

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERG TRANSIT SYSTEMS (USA), INC., | } |
| | } |
| *Plaintiff*, | } |
| | } |
| v. | } Case No. 1:07-cv-01924 |
| | } |
| WASHINGTON METROPOLITAN | } |
| AREA TRANSIT AUTHORITY, | } |
| | } |
| Defendant. | } |

## MEMORANDUM OF POINTS AND AUTHORITIES OF ERG TRANSIT SYSTEMS (USA), INC. IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff, ERG Transit Systems (USA), Inc. ("ERG"), by its undersigned counsel and pursuant to LCvR 15.1 and Rule 15(a)(2) of the Federal Rules of Civil procedure, hereby respectfully submits the following Memorandum of Points and Authorities in Support of Motion to Amend Complaint (the "Motion"). ERG moves this court to allow amendment to the original Complaint ("the Complaint") to incorporate ERG's objection to release of additional documents by the Washington Metropolitan Area Transit Authority ("WMATA") pursuant to a request for information under WMATA's Public Access to Records Policy ("PARP') by Cubic Transit Systems, Inc. ("Cubic"). **Pursuant to LCvR 7, undersigned counsel represents that, after conferring with counsel for Defendant WMATA and Intervenor Cubic, each stated that it has no objection to the relief requested in the Motion.**

### *Statement of Facts*

1.      In its original Complaint, ERG alleged that WMATA, in violation of the PARP, intends to release to Cubic, the requester of the records, certain documents ("first wave") related

to ERG's performance of contract No. C05304 ("the contract") for WMATA. Through the Complaint, "ERG seeks declaration and enforcement of its rights under the PARP to protect from disclosure, and permanently enjoin WMATA from releasing . . . confidential and proprietary commercial and financial information and trade secrets ERG submitted to WMATA." *See* Complaint at ¶ 8. Such information is "exempt from disclosure under . . . federal law governing application of . . . the PARP pursuant to 5 U.S.C. § 552(b)(4) and the co-extensive protection of the federal Trade Secrets Act, 18 U.S.C. § 1905, as applied in [Freedom of Information Act] Jurisprudence." *See* Complaint at ¶ 9.

2.    In a letter dated May 2, 2007, Cubic submitted a PARP request to WMATA for information related to ERG's performance on the contract. WMATA found documents it determined were responsive to Cubic's request ("first wave") and, pursuant to the PARP, forwarded these documents to ERG to give ERG the opportunity to voice objections prior to WMATA's decision to release the material.

3.    ERG submitted to WMATA objections to the release of a significant portion of the "first wave" material. Nevertheless, on October 11, 2007, WMATA sent a letter to ERG informing it that WMATA intended to release a great deal of material to which ERG objected and that it planned on releasing the material on October 26, 2007. To forestall release, ERG filed the Complaint on October 25, 2007.

4.    Also, in this October 11, 2007 letter, WMATA informed ERG that it had found additional materials ("second wave") responsive to Cubic's May 2, 2007 PARP request and gave ERG the opportunity to submit objections to this material by October 26, 2007. As with the "first wave" of documents, the second wave of documents involves submissions by ERG to WMATA in an effort to negotiate matters arising in the context of the contract administration

process. The letter went on to say that if ERG had objections to the "second wave," WMATA would take these under consideration when deciding on what of the second wave materials to release.

4.     Rather than deferring release of all materials it deemed responsive to the PARP request at once, as was requested by ERG, WMATA decided to release the "first wave" materials on October 26, 2007, before ERG's time had run for it to object to the "second wave" materials and well before WMATA could make a final determination on that matter. Because WMATA had not yet made a final determination on the "second wave" of documents, that determination was not yet ripe for incorporation in the Complaint.

5.     On October 26, 2007, ERG submitted its objections to the "second wave" in writing, requesting that certain documents in their entirety not be disclosed and that others be redacted, to prevent disclosure of confidential commercial and financial information submitted to WMATA by ERG, disclosure of which would either cause ERG competitive harm or which was information not generally disclosed publicly by ERG.

6.     On January 10, 2008, WMATA, via letter, informed ERG of its final decision and identified what of the "second wave" materials it intended to release to Cubic on January 28, 2008. WMATA, in its "second wave" determination, proposes to release a significant portion of material over ERG's objection.

7.     The amendment requires only minimal changes to the Complaint and will not unduly prejudice the defendant or intervenor.

## II.     _Rule 15 Legal Standard and Argument_

A Party wishing to amend a pleading after a response has been filed must obtain agreement of the opposing party or seek leave of court, but "leave shall be freely given when

- 3 -

justice so requires." Fed. R. Civ. R. 15(a).  The courts have interpreted this rule in accordance

with its plain language, and require a reason to deny.  As stated by the Supreme Court:

> In the absence of any apparent or declared reason—such as undue
> delay, bad faith, or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of the amendment, etc.—the
> sought should, as the rules require, be freely given.

*Forman v. Davis*, 371 U.S. 178, 182 (1962).  Accordingly, this Circuit generally favors allowing

amendments.  *See Davis v. Liberty Mutual Insurance Co.*, 871 F.2d 1134, 1136-37 (D.C. Cir.

1989).  It is an abuse of discretion to deny amendment without any justifying reason.  *See*

*Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), *citing Forman*, 371 U.S. at 182.

There is no undue delay, bad faith, or dilatory motive associated with this request,

instead, it arises from the course of WMATA's administration of the PARP process in regard to

Cubic's request.  WMATA's decision to release the "first wave" of documents to Cubic before

WMATA made a decision on what "second wave" documents to release (or for ERG to even

voice its objections) necessitated ERG filing suit to stop release of the first wave materials before

it knew what documents would form the "second wave" WMATA intended to release.  Now that

WMATA has made a decision on the "second wave" documents and intends to release those to

Cubic on January 28, 2008, it has now become necessary to amend the complaint to clearly

incorporate ERG's objections to the disclosure of a significant portion of the "second wave"

documents.

No prejudice results by allowing amendment.  First, both ERG and WMATA anticipated

amendment of the complaint to incorporate ERG's objections to the "second wave" documents

when WMATA decided to release the "first wave" before the "second wave."  *See* Joint

Proposed Briefing Schedule, filed by WMATA and ERG.  Second, each of WMATA and Cubic

have, by counsel, indicated that they have no objection to the relief requested hereby. Third, all the issues involved in connection with WMATA's proposed disclosure of the "first wave" and "second wave" documents are substantially the same. The interests of efficiency and economy favor resolution of all issues concerning Cubic's request and all the records WMATA proposes to release in response over WMATA's objections thereto at one time, in one action. Finally, the briefing schedule order entered by the Court provides ample time for both sides to address those issues.

### III.    *Conclusion and Prayer for Relief*

**WHEREFORE**, ERG respectfully requests that this Court:

Enter an Order GRANTNG ERG's Motion to for Leave to Amend Complaint, and accepting for filing the First Amended Complaint attached to the Motion as Exhibit A.

Respectfully submitted,

**ERG TRANSIT SYSTEMS (USA), INC.**

By its attorneys:    /s/ Benjamin J. Lambiotte
Benjamin J. Lambiotte, Esq.
D.C. Bar No. 421288
blambiotte@gsblaw.com
Matthew C. Hoyer, Esq.
D.C. Bar. No. 975544
Robert A.W. Boraks, Esq.
D.C. Bar No.  72132
**GARVEY SCHUBERT BARER**
1000 Potomac Street, Fifth Floor
Washington, D.C. 20007
(202) 965-7880

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERG TRANSIT SYSTEMS (USA), INC.,    }
    }
    }
     *Plaintiff*,    }
    }
   v.    }    **Case No.  1:07-cv-01924**
    }
WASHINGTON METROPOLITAN    }
AREA TRANSIT AUTHORITY,    }
    }
     **Defendant.**    }
    }

## PLAINTIFF'S FIRST AMENDED COMPLAINT

As and for its complaint against the Washington Metropolitan Area Transit Authority

("WMATA"), ERG Transit Systems (USA), Inc. ("ERG") for declaratory judgment,

enforcement of WMATA's Public Access to Records Policy, and a permanent injunction, ERG

states as follows:

### INTRODUCTION AND NATURE OF ACTION

In 2005, WMATA approved and promulgated an amended Public Access to Records

Policy ("PARP"), which provides that "WMATA will interpret and apply this Policy consistent

with the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and federal practice . . ."

PARP, § 1.0, at p. 1.  Like FOIA, the PARP establishes exemptions from disclosure of trade

secrets and confidential commercial or financial information submitted to WMATA by a person

or entity, and mandatory procedures for handling such information which may be exempt on that

basis.

By this Complaint, ERG seeks a declaration of its rights under, and to enforce, the PARP,

and to protect from disclosure and permanently enjoin WMATA from releasing, pursuant to the

request for disclosure of ERG's competitor, Cubic Transportation Systems, Inc., confidential and

proprietary commercial and financial information and trade secrets ERG submitted to WMATA

in connection with administration of WMATA Contract No. C05304. Such information and

trade secrets are exempt from disclosure under federal FOIA law governing application of the

relevant sections of the PARP, pursuant to the exemption at 5 U.S.C. § 552(b)(4), and the co-

extensive protection of the federal Trade Secrets Act, 18 U.S.C. § 1905, under federal FOIA

jurisprudence, made applicable to the PARP under Section 1.0 thereof.

## PARTIES

1.      Plaintiff ERG Transit Systems (USA), Inc., is a corporation organized and

existing under the laws of California, having its principal place of business in Concord,

California.

2.      ERG is the U.S. operating company within the ERG Group. Its parent company,

ERG Ltd., is located in Perth, Western Australia. The ERG Group is one of the world's leading

developers and suppliers of integrated fare management software systems, and smart card

systems and services for the transit industry, with transit customers throughout the world.

3.      WMATA is an interstate instrumentality created under an interstate Compact

among the District of Columbia, the State of Maryland, and the Commonwealth of Virginia to

create, operate and administer a mass transit system for the Washington, D.C., metropolitan area.

D.C. Code Ann. § 9-1107.01 *et seq.* (2006 Supp.); Md. Code Ann., Transportation Article, § 10-

204 *et seq.* (2004); Va. Code Ann. § 56-529 *et seq.* (2004). WMATA has the capacity to be sued

in its own name. D.C. Code Ann § 9-1007.01, WMATA Compact, Art. V, § 12(a).

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to Section 81

of the WMATA Compact, D.C. Code Ann. §§ 9-1107.01, Art. XVI, § 81, and 9-1107.10, which

provide:

> The United States District Courts shall have original jurisdiction, concurrent
> with the Courts of Maryland and Virginia, of all actions brought by or
> against [WMATA] and to enforce subpoenas issued under [the WMATA
> Compact]. Any such action initiated in a State or District of Columbia
> Court shall be removable to the appropriate United States District Court in
> the manner provided by 28 U.S.C. §1446.

The United States Congress consented to the original WMATA Compact in Public Law

No. 89-774 (Nov. 6, 1966) preamble, 80 Stat. 1324–1325, under the authority of article I,

section 10, clause 3 of the United States Constitution. The WMATA Compact, including Section

81, has the force and effect of a law of the United States. *Texas* v. *New Mexico,* 482 U.S. 124, 128

(1987).

5.    This case involves an actual controversy within the jurisdiction of this Court, and

this Court has the power to declare the parties' rights under the federal Declaratory Judgment

Act, 28 U.S.C. § 2201(a), and to grant such further necessary and proper relief.

6.    Section 9.3.2 of the PARP provides that, "[I]n accordance with Section 81 of the

WMATA Compact, an action to enforce the [PARP] may be brought in any state or federal

Court of the United States located in the District of Columbia, Maryland or Virginia, without

regard to the amount in controversy."

7.    The PARP expressly provides that "WMATA will interpret and apply this Policy

consistent with the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, and federal

practice . . . ." PARP, § 1, at p. 1.

8.     By this Complaint, ERG seeks declaration and enforcement of its rights under the

PARP to protect from disclosure, and permanently enjoin WMATA from releasing, pursuant to

the request for disclosure of ERG's competitor, Cubic Transportation Systems, Inc. ("Cubic"),

confidential and proprietary commercial and financial information and trade secrets ERG

submitted to WMATA in connection with administration of WMATA Contract No. C05304.

9.     Such information and trade secrets are exempt from disclosure under federal

FOIA law governing application of Section 6.1.4 of the PARP, pursuant to the exemption at

5 U.S.C. § 552(b)(4), and the co-extensive protection of the federal Trade Secrets Act, 18 U.S.C.

§ 1905, as applied in federal FOIA jurisprudence.

10.    Venue properly lies in this Court.

## FACTUAL BACKGROUND

A.     ***The Contract, Contract Administration Issues, and ERG's Efforts to
To Resolve Them With WMATA Cooperatively Through Negotiations***

11.    In 1999, WMATA introduced the "SmarTrip®" card, a memory logic "smart

card," enabling payment of Metrorail fares, utilizing chip technology developed by Cubic and

Ramtron International Corporation.

12.    Cubic is a direct competitor of ERG's, offering similar products and services.

Each company regularly bids in major procurements for smart card systems and related services

for transit systems in the United States and other countries.  ERG and Cubic have competed in

the United States for approximately 10 years and longer internationally.  Over the past decade,

contracts awarded for most of such systems in connection with major public transit projects in

the U.S. and U.K. have gone to either ERG or Cubic, or in some cases, including the WMATA

procurement from which this case arises, both companies were awarded contracts and directed to

integrate systems.

13.    A "smart card," as employed by WMATA, is a layered plastic card in which is embedded a microprocessor, and a radio frequency receiver. Upon being contacted by a radio transmission device, the card can communicate with the transmission source, and perform data storage and mathematical manipulation, including retrieval and modification of the data stored on the memory of the card. On information and belief, Cubic is the sole source of SmarTrip® cards to WMATA.

14.    In 2001, WMATA issued a Request for Proposal for the procurement of a state of the art automatic fare collection system ("RFP"). The project contemplated by the original RFP involved the supply, delivery, installation and maintenance by the successful offeror of a specified quantity of electronic validating bus fare collection systems, revenue collection equipment, ancillary equipment, spare parts, software and services for use in the Washington D.C. metropolitan area by WMATA and other regional bus operators.

15.    As of 2002, WMATA was using its SmarTrip® cards for rail travel and Metro station parking. In the RFP, WMATA sought to expand SmarTrip® to become a seamless, integrated regional smart card-enabled fare payment system to be used on WMATA's and other regional bus operators' non-rail transit systems.

16.    In January 2002, ERG submitted a final proposal, which was a revised proposal. By then, the RFP had been modified by WMATA not less than eight times.

17.    Cubic also submitted proposals in response to the RFP and amendments thereto. WMATA's series of modifications to the RFP embodied changes in the technical approach that ultimately resulted in contract awards to both Cubic and ERG, with a mandate to both contractors to integrate their respective systems.

5

18.     ERG's contract has an initial term of five years (one year startup "design/build"

phase and four year "operation and maintenance" phase), with options for WMATA to renew for

two successive two year periods. The initial term is set to expire in July 2008, unless ERG's

period of performance is extended. Upon expiration, the work to be performed by ERG will

likely be subject to a competitive procurement. ERG intends to bid in any such procurement.

19.     On information and belief, Cubic is also likely to bid in such a procurement in

competition with ERG.

20.     Despite ERG's repeated warnings to WMATA that administering the SmarTrip®

program through two contracts – one with ERG and the other with Cubic – created

interdependency and potential for interference with ERG's performance due to delays or

problems with Cubic's performance, WMATA proceeded in that manner nonetheless. As

predicted, these same contract administration issues delayed ERG's ability to meet the tight

timelines for the startup "design and build" phase, and caused ERG to incur additional costs.

They also resulted in numerous changes to the contract work.

21.     From the inception of the contract, through and including the present date, ERG

has attempted to resolve these administration issues through cooperative negotiations with

WMATA. These efforts culminated in ERG's submission in February 26, 2006, of a request for

equitable adjustment ("REA").

22.     ERG deliberately structured the REA to facilitate resolution through confidential

negotiations, which ERG stated was its preferred mode of dealing with the issues it previously

raised and tried to resolve with WMATA. In consequence, each page of the REA was marked

"confidential." The REA provides WMATA with ERG's confidential perspective on the reasons

why those efforts had not succeeded and why the project had been delayed as a result of

6

WMATA's failure to administer the contract properly, and chronicling ERG's attempts to resolve the issues with WMATA cooperatively.

23.    After months of additional negotiations, in September 2006, WMATA and ERG agreed to settle certain specific elements of the REA, through a bilateral contract modification increasing ERG's compensation for the specific items addressed in the modification, which became effective on December 21, 2006.

24.    Other elements of the REA, by agreement of the parties, were not resolved by the modification, but expressly reserved, and those elements continue to be the subject of continuing settlement negotiations between WMATA and ERG.

### B.    PARP Procedures for Protection of Submitter's Business Information That May be Exempt From Disclosure Under Section 6.14

25.    In the WMATA PARP Statement of Purpose, WMATA recognizes that, in the regular course of its business, it receives from outside sources records on a variety of topics, and that "[s]ome of the records, if released, could benefit selectively or could cause personal or economic harm to members of the public [or] other organizations." PARP § 2.0, at p. 1.

26.    Accordingly, Section 6.1.4 of the PARP exempts from disclosure "trade secrets and commercial or financial information obtained from a person and is privileged or confidential." This PARP exemption mirrors Exemption 4 under the federal FOIA. *See* 5 U.S.C. § 552(b)(4).

27.    The PARP Section 7.11 governs WMATA's handling of requests for records that are potentially exempt under PARP Section 6.1.4, and provides that "[b]usiness information obtained by WMATA from a Submitter will be disclosed only pursuant to this Section." PARP § 7.11.1. The PARP defines "business information" as "information that may be protected from

7

disclosure under subsection 6.1.4 of this Policy," and "Submitter" as "any person or entity from whom WMATA obtains business information, directly or indirectly." *Id.* § 7.11.2.

28.    The PARP further provides that a "Submitter of business information will use good faith efforts to designate, by appropriate markings, either at the time of submission or at a reasonable time thereafter, any portions of its submission that it considers to be protected from disclosure under section 6.4.1 of this Policy." *Id.* § 7.11.3.

29.    When WMATA's PARP Administrator receives a PARP request that seeks a Submitter's business information, and the information has been designated by Submitter in good faith as information considered to be protected from disclosure under subsection 6.1.4, or when WMATA has reason to believe that the information may be protected from disclosure under subsection 6.1.4, then WMATA is obliged to provide the Submitter with prompt written notice of such a request, to give the Submitter an opportunity to object to disclosure of any specified portion or that information under subsection 7.11.6 of the Policy. *Id.* § 7.11.4 & 7.11.5. The requester, too, is entitled to notice that WMATA has provided a Submitter with notice and an opportunity to object to disclosure. *Id.* § 7.11.10.

30.    WMATA is obliged to consider a Submitter's objections and the specific grounds for nondisclosure in deciding whether to disclose business information. When WMATA decides to disclose such information over the objection of the Submitter, the PARP Administrator shall give the Submitter written notice, return receipt requested, stating its reasons why each of the Submitter's disclosure objections were not sustained, and description of the business information to be disclosed, and a specified disclosure date. *Id.* § 7.11.7.

8

31.    Section 7.11 of the PARP expressly contemplates the filing of a lawsuit by Submitter to prevent disclosure of business information, and requires, in such a case, that WMATA notify the requester of the filing of such a suit. *Id.* § 7.11.10.

32.    ERG is a Submitter of the records and information at issue in this case within the meaning of Section 7.11 of the PARP, and properly designated such records and information as submissions that it considers to be protected from disclosure under Section 6.1.4, as required by Section 7.11.3 of the PARP.

### C.    *Cubic's Records Request, WMATA's Notice, ERG'S Response and WMATA's Disclosure Decision*

33.    By letter dated May 2, 2007, invoking the PARP, Cubic requested WMATA to release to Cubic copies of any ERG Requests for Equitable Adjustments and All Contract Modifications, copies of all ERG/WMATA Negotiated Settlement Agreements, all ERG claim documents, and dispositions on all claims.

34.    On August 15, 2007, ERG received a letter from WMATA giving notice that WMATA had determined that certain business records submitted by ERG to WMATA were responsive to a request for release of records pursuant to the PARP. The letter stated that, if ERG considered any of the information in the records identified by WMATA to be proprietary or confidential, ERG was to identify such information, and explain why, by August 30, 2007. On information and belief, the referenced request was Cubic's request of May 2, 2007.

35.    ERG responded to WMATA's notice in writing, on August 28, 2007, as supplemented by an additional submission on August 30, 2007. In its responses, ERG requested that certain documents in their entirety not be disclosed and that others be redacted, to prevent disclosure of confidential commercial and financial information submitted to WMATA by ERG,

disclosure of which would either cause ERG competitive harm, or which was information not generally disclosed publicly by ERG.

36.    On October 11, 2007, WMATA sent ERG a further notice declaring its intention to release to the requester certain documents and information, disclosure of which ERG had objected in its responses, on October 26, 2007.

37.    In the October 11, 2007 decision, WMATA took the positions that *all* the records and information it proposed to release were required to have been submitted by the contract, and, thus, "involuntarily" submitted by ERG to WMATA within the meaning of FOIA, and that the standard WMATA applied in determining whether they were exempt from disclosure was whether their release would cause substantial competitive harm to ERG. Also, WMATA notified ERG that it had identified additional documents it deemed responsive to Cubic's request, and demanded that ERG notify WMATA, by the same date, October 26, 2007, of any objections ERG had to disclosure of the "second wave" of documents, the same day it proposed to release the "first wave" of documents.

38.    Despite WMATA's characterization of its October 11, 2007, letter as a "final determination" regarding Cubic's request for records, the letter's express identification of additional records and request for ERG's position as to whether they are confidential or proprietary and exempt from disclosure manifestly demonstrates that the October 11, 2007, letter is not, in a practical sense, a final determination as to whether records WMATA deems responsive to the information request at issue should be withheld as exempt from disclosure. Indeed, in the letter, WMATA states expressly that it will issue yet another determination as to the "second wave" of documents, after it considers ERG's objections to disclosure. ERG has

objections to disclosure of certain of the records and information identified in the "second wave," and will so respond.

39.    After receipt of the notice, ERG, by counsel, contacted WMATA, noted that ERG did not agree with WMATA's determinations, and requested that WMATA defer disclosure of the "first wave" of documents until ERG could be heard on its objections to disclosure of the "second wave," so that ERG could seek judicial review of all of WMATA's disclosure decisions and disposition of ERG's objections in one action, as opposed to inefficient piecemeal litigation.

40.    WMATA's piecemeal approach is arbitrary, capricious, an abuse of discretion, and contrary to the PARP, which does not contemplate or authorize multiple, serial "final determinations" as to a submitter's objections to disclosure of submitted records the agency identifies as responsive to a single request. This approach creates a strong potential for duplicative, inefficient judicial review in multiple actions, which would unnecessarily tax the resources of the court and the parties, and creates the potential for inconsistent rulings on the same issues. In addition, this approach deprives this Court of a complete record against which to measure WMATA's determinations as to the entire records request, yet ERG has no choice but to seek review now on a partial record, because WMATA will not agree to defer release of the "first wave" records until WMATA considers and determines issues raised by ERG as to the "second wave."

41.    On October 26, 2007, ERG submitted its objections to the "second wave" in writing, requesting that certain documents in their entirety not be disclosed and that others be redacted, to prevent disclosure of confidential commercial and financial information submitted to WMATA by ERG, disclosure of which would either cause ERG competitive harm or which was information not generally disclosed publicly by ERG. On January 10, 2008, WMATA, via letter,

informed ERG of its final decision and identified what of the second wave materials it intended to release to Cubic on January 28, 2008. WMATA intends to release a significant portion of material over ERG's objection.

42.    WMATA's determinations as to the records it proposes to release are founded on a misapplication of the appropriate legal standard. Without reasoned analysis supported in the record, WMATA issued a blanket pronouncement that *all* records it identified in its October 11, 2007 and January 10, 2008 letters were "involuntarily" submitted by ERG as part of the contract requirements, and therefore that ERG must show substantial competitive harm as to all such records. This conclusion is arbitrary, capricious, an abuse of discretion, and contrary to law.

43.    Most of the records WMATA has determined to disclose and/or refuses to redact in the manner proposed by ERG pertain not to the types of information ERG is required to produce in connection with *obtaining* a contract and regarded under FOIA case law to be subject to the "involuntary" submission standard. Rather, such records and information ERG voluntarily submitted to WMATA in connection with negotiations pertaining to issues arising in the *administration* of the contract.

44.    The REA itself and two letters ERG submitted to WMATA in connection therewith are an illustrative, but not exclusive, example. WMATA agreed to withhold the bulk of the REA on the grounds that premature disclosure of the document would compromise WMATA's negotiating position. WMATA refused to withhold or redact in the manner proposed by ERG the letters and other portions of the REA, overruling ERG's objections that the information was confidential commercial and financial information that would not generally be disclosed to the public. These documents are clearly marked "confidential," and were submitted

12

to WMATA to facilitate an ongoing business negotiation concerning contract administration issues, which has not yet concluded.

45.     WMATA's determinations in the October 11, 2007 letter, and in the January 10, 2008 letter, further reflect WMATA's inconsistent application of PARP § 6.1.4 to the same types of records and information, in some cases deciding to release records and information or to refuse redactions suggested by ERG, and in others, agreeing to redact or withhold the same categories or types of information, without articulating any reasoning for the differential treatment. Such inconsistent application of legal standards is also arbitrary, capricious, an abuse of discretion, and in excess of WMATA's authority under PARP.

46.     To the extent that records and information submitted by ERG to WMATA and identified by WMATA as subject to disclosure (over ERG's objections that the records and/or information are confidential commercial or financial information, disclosure of which to ERG's competitor Cubic would likely result in substantial competitive harm to ERG), were properly governed by legal standards applicable to "involuntary" submissions, WMATA's rejection of ERG's objections and suggested redactions and decision to release such records and information are arbitrary, capricious, an abuse of discretion, and in excess of WMATA's authority under the PARP.

47.     Due to the interdependencies created by the manner in which WMATA has elected to administer the ERG and Cubic contracts, WMATA's proposed disclosures of ERG's confidential and proprietary commercial and financial information submitted to WMATA in connection with ERG's negotiations would give Cubic an unfair insight into the details of the competitive and financial impact on ERG of Cubic's behavior in performance of its own contract, and Cubic's attempts to influence WMATA's contract administration practices. This

would inure to ERG's competitive disadvantage in connection with this contract, and also in connection with future procurements before WMATA and other agencies in which ERG and Cubic may compete.

48.    Given Cubic's history, disclosure of the records and information as proposed by WMATA is likely to enable Cubic to interfere with ERG's performance, to ERG's competitive disadvantage.

49.    In addition, WMATA's decisions concerning financial, cost, rates, price, duration of performance, proposed methods and orders of performance and workflow information in the ERG records WMATA decided to release would, alone and/or in combination with other released records and information, either:  (a) directly give an advantage to a competitor of ERG (including Cubic, the requester of the records at issue) in derogation of ERG's competitive position; or, (b) by extrapolation from information WMATA refused to redact, permit a competitor to ascertain the same information WMATA redacted.

50.    Because it proposes to disclose confidential or privileged commercial or financial information exempt from disclosure under PARP § 6.14, WMATA's October 11, 2007 and January 10, 2008, determinations are without authority, arbitrary, capricious, and abuse of discretion, and contrary to federal law governing exemption (b)(4) under FOIA, as applied in federal FOIA jurisprudence and made applicable to this case by operation of PARP § 1.0.

51.    The information requested by Cubic contains ERG's trade secrets within the meaning of the federal Trade Secrets Act ("TSA"), 18 U.S.C. § 1905.

52.    To the extent that WMATA discloses records or information protected from disclosure by operation of the exemption at PARP § 6.14, such disclosure would also be

prohibited under TSA, and such disclosure would be in violation of ERG's rights pursuant to the TSA.

53.    As enumerated herein, ERG will suffer immediate and irreparable harm if WMATA discloses ERG's confidential and proprietary commercial and financial information and trade secrets as proposed in WMATA's October 11, 2007 and January 10, 2008 letters, to ERG's commercial competitor, Cubic.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiff ERG Transit Systems (USA), Inc. respectfully requests the Court to enter an order and judgment:

A.    Decreeing and declaring exempt from release or disclosure under the PARP the records and information submitted to WMATA by ERG and identified by WMATA as subject to release and disclosure over ERG's objections in WMATA's October 11, 2007 and January 10, 2008 decisions (the "Information");

B.    Setting aside and holding unlawful WMATA's October 11, 2007 and January 10, 2008 decisions to release the Information as arbitrary, capricious, an abuse of discretion, contrary to law, and in excess of WMATA's authority;

C.    Enjoining permanently WMATA from releasing and disclosing the Information; and

D.    Granting such other and further declaratory, injunctive, equitable, and legal relief as justice may require in the circumstances of this case.

Respectfully submitted,

**ERG TRANSIT SYSTEMS (USA), INC.**

15

By its attorneys:          /s/  Benjamin J. Lambiotte
                           Benjamin J. Lambiotte
                           D.C. Bar No. 421288
                           blambiotte@gsblaw.com
                           Matthew C. Hoyer
                           D.C. Bar. No. 975544
                           Robert A.W. Boraks
                           D.C. Bar No.  72132
                           **GARVEY SCHUBERT BARER**
                           1000 Potomac Street, Fifth Floor
                           Washington, D.C. 20007
                           (202) 965-7880

**IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ERG TRANSIT SYSTEMS (USA), INC.,** } | |
| } | |
| *Plaintiff,* } | |
| } | |
| v. } | **Case No. 1:07-cv-01924** |
| } | |
| **WASHINGTON METROPOLITAN** } | |
| **AREA TRANSIT AUTHORITY,** } | |
| } | |
| **Defendant.** } | |

## PROPOSED ORDER

Upon consideration of the plaintiff's Motion to Amend Complaint, and the defendant's

and intervenor's lack of objections thereto, it is hereby

ORDERED that plaintiff's Motion to Amend Complaint is hereby GRANTED, and

ERG's First Amended Complaint attached to the Motion as Exhibit A is hereby accepted for

filing and deemed filed.


Dated:_____          _____

ROSEMARY M. COLLYER
United States District Court Judge


Copies to:

All counsel of record, via ECM:

blambiotte@gsblaw.com

pstaub@wmata.com

rglover@wileyrein.com