# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERG TRANSIT SYSTEMS (USA), INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 07-1924 (RMC) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) |
| Defendant, | ) |
| and | ) |
| CUBIC TRANSPORTATION SYSTEMS, INC., | ) |
| Intervenor Defendant. | ) |

## MEMORANDUM OPINION

In this "reverse" Freedom of Information Act ("FOIA")[1] case, ERG Transit Systems (USA), Inc. ("ERG") sues the Washington Metropolitan Area Transit Authority ("WMATA") to prevent WMATA from releasing certain ERG records to its competitor, Cubic Transportation Systems, Inc. ("Cubic"), under WMATA's Public Access to Records Policy ("PARP"), which, for purposes of this case, is identical to, and interpreted in accordance with, the FOIA.[2] ERG argues that the records are exempt from compelled disclosure under FOIA Exemption 4, 5 U.S.C. § 552(b)(4). Both WMATA and Cubic disagree. All parties have moved for summary judgment. The Court will grant in part and deny in part ERG's motion and deny WMATA's and Cubic's motions.

---

[1] 5 U.S.C. § 552.

[2] Accordingly, the Court will refer only to FOIA law.

## I. FACTS

ERG is a California corporation that develops and supplies integrated fare management software systems and "smart card" systems and services for the transit industry. Cubic is a Delaware corporation that directly competes with ERG. In 2001, WMATA issued a request for proposals for the procurement of an automatic fare collection system. Both ERG and Cubic submitted proposals. WMATA awarded the contract to both ERG and Cubic, giving part of the work to ERG and part to Cubic. Delays resulted from difficulties in integrating ERG's and Cubic's operating systems, which apparently were less than perfectly compatible, and ERG incurred additional costs because of the shared work relationship with Cubic. In response, ERG submitted to WMATA several requests for change orders and, ultimately, a request for an equitable adjustment to the contract with supporting documentary evidence.[3]

These submissions are the subject of Cubic's PARP request and this lawsuit. WMATA informed ERG that it intends to release the records to Cubic, subject to certain redactions of, *inter alia*, information that WMATA determined would aid a competitor, and ERG filed this suit to enjoin WMATA from doing so. ERG argues that much of the information WMATA intends to disclose to Cubic is exempt from compelled disclosure under Exemption 4, 5 U.S.C. § 552(b)(4), because it is confidential commercial and financial information that is not routinely disclosed to the public and which ERG voluntarily submitted to WMATA. WMATA determined that Exemption 4 is inapplicable because ERG submitted the documents to it involuntarily and disclosure of the information would not cause ERG substantial competitive harm.

---

[3] "The term 'equitable adjustment' is a legal term of art; it signifies a principle designed to keep a contractor whole when the Government modifies a contract." *Gen Ry. Signal Co. v. WMATA*, 875 F.2d 320, 324-25 (D.C. Cir. 1989) (quotation marks and citation omitted).

ERG asks the Court to enjoin WMATA from releasing its "confidential and proprietary commercial and financial information and trade secrets to a direct competitor." Pl.'s Mot. for Summ. J. at 2. WMATA requests that, should the Court determine the threshold issue of the voluntariness of the submissions in ERG's favor, "the Court remand this matter to WMATA for revision of its redactions in accordance with the standard for voluntarily submitted records." Def.'s Mot. for Summ. J. at 2.[4]

## II. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671,

---

[4] WMATA admits that were it "to apply the standard urged by ERG, the records would be more extensively redacted than WMATA decided, to the extent ERG can substantiate the records are not customarily made available to the public." Def.'s Mot. for Summ. J. at 2.

675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

"A person whose information is about to be disclosed pursuant to a FOIA request may file a 'reverse-FOIA action' and seek to enjoin the Government from disclosing it." *Canadian Commercial Corp. v. Dep't of Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008). Reverse FOIA cases are deemed informal agency adjudications, and thus are reviewable under Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706. *See Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 337 (D.C. Cir. 1989); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 317-18 (1979) (reverse FOIA cases are reviewed under the Administrative Procedure Act). Accordingly, the Court must decide whether WMATA's FOIA determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see also CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1154-55 (D.C. Cir. 1987).

### III.  ANALYSIS

The FOIA mandates the disclosure of agency records unless the records are exempt from compelled disclosure by one of nine exemptions. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b). In addition to trade secrets, Exemption 4 protects from public disclosure information that is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983); *see also* 5 U.S.C. § 552(b)(4). The only issue in dispute is whether the information ERG submitted to WMATA in connection with its request for an equitable adjustment to the contract is

"confidential."[5]

Whether the information is "confidential" within the meaning of Exemption 4 depends on whether ERG provided the information to WMATA "on a voluntary basis" or "under compulsion." *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879 (D.C. Cir. 1992) (*en banc*). "[F]inancial or commercial information provided to the Government on a voluntary basis is 'confidential' for the purposes of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." *Id.* However, "[i]nformation that a person is required to submit to the Government is considered confidential only if its disclosure is likely either '(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.'" *Pub. Citizen Health Research Group v. FDA*, 185 F.3d 898, 903 (D.C. Cir. 1999) (quoting *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). "[A]ctual legal authority, rather than parties' beliefs or intentions, governs judicial assessments of the character of submissions." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 149 (D.C. Cir. 2001).

"WMATA relied on two main factors in determining that the documents were required: the contract required ERG to submit the documents if it wanted to pursue a change, and ERG submitted them in order to obtain additional compensation." Def.'s Mem. in Supp. of Mot. for Summ. J. at 6. Neither factor supports WMATA's determination.

---

[5] Neither WMATA nor Cubic argue that Exemption 4 is inapplicable because the information submitted was not "commercial or financial" information or because the information was not "obtained from a person." Accordingly, the Court finds that WMATA and Cubic have conceded those arguments.

WMATA and Cubic argue that General Provisions 2 and 9 of the contract compelled ERG to submit to WMATA the information that is the subject of this dispute. General Provision 2, entitled "Changes," provided, in relevant part, that the "Contracting Officer" could change the contract by "written order" and that "[i]f any such change causes an increase or decrease in the cost of, or the time required for, the performance of any part of the work under this Contract, whether changed or not changed by the order, the Contracting Officer shall make an equitable adjustment in the Contract price, the delivery schedule, or both, and shall modify the Contract." *Id.*, Ex. B (Contract C05034 General Provisions ("GP") ¶ 2.a. & b.) (under seal).[6] The only requirement of General Provision 2 that could even plausibly apply to ERG is the requirement that "[t]he Contractor must assert its right to an adjustment under this article within 30 days from the date of receipt of the written order." GP ¶ 2.c. However, a condition precedent to that requirement is that WMATA first have issued a written order changing the terms of the contract; General Provision 2 is silent as to contractor-initiated adjustments, like here. Even adopting WMATA's strained interpretation and assuming that General Provision 2 applies in the absence of a written change order by WMATA, the most that General Provision 2 required of ERG was that it "assert its right to an adjustment" within a certain time frame. *Id.* The contract did not specify how a contractor was to make such an assertion and General Provision 2 did not expressly require a contractor wanting an adjustment to submit any particular information. Indeed, General Provision 2 did not require that the assertion of a right to an adjustment be in writing.

---

[6] "Contracting Officer" is defined as the person executing the contract on behalf of WMATA and that person's authorized representative. *See* GP ¶ 1.b.

General Provision 9, entitled "Delay of Work," provided, in relevant part, that "[i]f the performance of all or any part of the work is delayed or interrupted by an act of the Contracting Officer in the administration of this Contract, . . . an adjustment . . . shall be made for any increase in the cost of performance of this Contract caused by such delay or interruption and the contract modified in writing accordingly."  GP ¶ 9.a.  This provision dealt with certain delays caused by WMATA and it is not at all clear that the provision is applicable to ERG's request for adjustment.  If General Provision 9 were to apply, the result is no different.  The only requirement that General Provision 9 placed on contractors was to give written notice to WMATA within 20 days of the act or failure to act that caused the delay or interruption of work, *see id.* ¶ 9.b.(1), and to submit a written "claim, in an amount stated, . . . as soon as practicable after the termination of such delay or interruption, but not later than the date of final payment under the Contract."  *Id.* ¶ 9.b.(2).  Thus, the most that General Provision 9 required of ERG was that, within a certain time frame, it submit a written "claim," an undefined term, and that the claim contain "an amount stated."  *Id.*  Absent is any language requiring a contractor to submit any other information, including that a contractor substantiate its claim with documentary evidence of the type that ERG actually submitted to WMATA and that is at issue here.

The documents relevant to this dispute consist of ERG-initiated proposals for changes to ERG's contract with WMATA, including the scope of work, period of performance, and contract compensation provisions.  The impetus for the proposals was ERG's alleged incurrence of additional costs resulting from the award by WMATA to both ERG and Cubic.[7]  Inasmuch as General Provisions 2 and 9, assuming their applicability, are timing provisions that at most required ERG to

---

[7] The Court expresses no opinion on the underlying pursuit of an equitable adjustment.

assert its right to an adjustment and/or submit its claim for an adjustment within a certain time period, WMATA's determination that the contract compelled ERG to submit the documents at issue here was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

Aside from the terms of the contract, WMATA and Cubic argue that ERG's submissions were involuntary because ERG provided the information to WMATA in order to obtain additional compensation from WMATA. They argue that "while ERG's decision to obtain a contract with WMATA was voluntary, documents submitted in pursuit of realizing benefits based on its decision to pursue the contract, such as actually obtaining the contract or obtaining more funds under the contract, [were] mandatory and thus involuntarily submitted." Intervenor Def.'s Opp'n at 7. However, the Court is persuaded to the contrary by the logic of *Mallinckrodt Inc. v. West*, 140 F. Supp. 2d 1, 6 (D.D.C. 2000) (rejecting as "flatly inconsistent with the intent of *Critical Mass*" the government's argument that "all of the information submitted in an effort to win a government contract should be viewed as having been required by the contract solicitation"), and *Cortez III Service Corp., Inc. v. NASA*, 921 F. Supp. 8, 13 (D.D.C. 1996) (holding that "additional information that was not required by the contract proposal document" was submitted voluntarily).

The cases on which WMATA and Cubic rely are distinguishable because in each of them the specific information in dispute was required to be submitted. *See Pub. Citizen Health Research Group v. FDA*, 964 F. Supp. 413, 414 n.1 (D.D.C. 1997) ("In this case, submission of the protocol was necessary in order to obtain FDA approval and was therefore required") (citation omitted); *McDonnell Douglas Corp. v. NASA*, 895 F. Supp. 316, 318 (D.D.C. 1995) ("NASA required that the contract itemize the prices for specific services"); *Chem. Waste Mgmt., Inc. v.*

*O'Leary*, No. 94-2230, 1995 WL 115894, at *4 (D.D.C. Feb. 28, 1995) ("plaintiff had no choice but to submit the unit price information once it chose to submit its proposal [because] [t]he RFP compelled Chem Waste to submit its unit prices"); *Lykes Bros. S.S. Co., Inc. v. Pena*, No. 92-2780, 1993 WL 786964, at *4 (D.D.C. Sept. 2, 1993) ("Marad required plaintiffs to submit the documents as a condition necessary to receiving approval of their application"). Those cases are further distinguishable because they involved information submitted in connection with bid proposals to obtain a contract, not information submitted in connection with proposals to negotiate the administration of an existing contract, as here. *Accord Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 125-26 (D.D.C. 2006) (concluding information was submitted voluntarily because "[t]he intervenor provided this information after it had been awarded a contract by the defendant, and the discussion contained in these documents concerns ongoing contract implementation, not bid proposals or contract procurement").

### IV. CONCLUSION

For the foregoing reasons, the Court finds that WMATA's determination that ERG submitted the information involuntarily was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Court will grant in part and deny in part ERG's motion for summary judgment [Dkt. # 24], deny WMATA's and Cubic's summary judgment motions [Dkt. ## 22 & 23], and remand Cubic's PARP request to WMATA to revise its redactions in accordance with the standard for voluntarily submitted records and report its results to the Court no later than February 27, 2009. ERG's request for a permanent injunction will

be denied without prejudice.  The Court retains jurisdiction.  A memorializing Order accompanies this Memorandum Opinion.

Date: January 22, 2009                                    /s/
                                                      ROSEMARY M. COLLYER
                                                     United States District Judge